PEOPLE *v.* PAVLIC.

1. HOMICIDE—UNLAWFUL SALE OF LIQUOR CAUSING BUYER'S DEATH —ACT MALUM PROHIBITUM.

> If the commission of the crime of selling intoxicating liquors in violation of the prohibition law unintentionally causes the death of another, the offender is not guilty of either murder or manslaughter unless he commits the act carelessly and in such manner as manifests a reckless disregard of human life; the felony being an act *malum prohibitum* merely and not one in and of itself inherently criminal.

2. SAME—MANSLAUGHTER — COMMISSION OF AN UNLAWFUL ACT — INTENT.

> The commission of an unlawful act will constitute manslaughter if performed under such circumstances as to supply the intent to do wrong and inflict some bodily injury.

3. SAME — DISTILLER OF MOONSHINE WHISKY CHARGEABLE WITH KNOWLEDGE OF ITS CONTENTS.

> Where defendant himself distilled the moonshine whisky

On criminal responsibility of one unlawfully furnishing intoxicating liquor for death resulting from its use, see note in 15 A. L. R. 244.

sold to deceased, the partaking of which, coupled with exposure, caused his death, if it was of greater potency than ordinary whisky or if it contained poisonous ingredients, defendant would be chargeable with knowledge of its dangerous character and would be guilty of involuntary manslaughter.

4. SAME — MANSLAUGHTER — EVIDENCE INSUFFICIENT TO WARRANT CONVICTION.

Where there was no evidence that the moonshine whisky sold by defendant to deceased was of greater potency or possessed any more poisonous ingredients than ordinary whisky, defendant was not guilty of manslaughter in selling same.

MOORE, FELLOWS, and WIEST, JJ., dissenting in part.

Exceptions before judgment from Muskegon; Vanderwerp (John), J. Submitted April 18, 1924. (Docket No. 134.) Decided June 18, 1924.

Tony Pavlic was convicted of involuntary manslaughter. Reversed.

*Willard J. Turner* (*John G. Turner*, of counsel), for appellant.

*Andrew B. Dougherty*, Attorney General, *Harry W. Jackson*, Prosecuting Attorney, and *R. Glen Dunn*, Assistant Prosecuting Attorney, for the people.

MCDONALD, J. The defendant was convicted of involuntary manslaughter and brings his case here for review on exceptions before sentence. The crime is charged to have been committed through the unlawful act of giving and selling the deceased moonshine whisky, the drinking of which, followed by exposure, caused his death. On the trial the defendant offered no proof, contending that the evidence introduced by the people was insufficient on which to base the charge. The testimony of the people shows that in February, 1923, Howard Harkness, the deceased, his brother Edward and one Casey Poort, were cutting

ice from a small lake in Newaygo county.    They were all accustomed to the use of intoxicating liquor. The defendant lived 11 miles away in Muskegon county and was known to be engaged in the business of manufacturing and selling moonshine whisky.    They decided to walk to his place and procure a gallon of the liquor.    Starting early in the morning they reached there at noon.    The defendant gave them about four drinks each and then sold the deceased a gallon, which he put into a half gallon glass jug and two quart bottles.    When they started home each had taken six or seven drinks and all were somewhat intoxicated. They arranged with the defendant to drive them part of the way home.    After they had gone a couple of miles something went wrong with the automobile and they undertook the balance of the journey on foot. As to what happened after that Edward Harkness testified:

"We left the automobile at that point where we turned it around and Howard and Casey took the liquor and we went on.    We were traveling in Indian file.    We were all companions at that time.    Casey had the bottles and Howard had the jug.    Howard was feeling better than the rest of us, I guess.    He ran through the woods.    He ran fast right through the woods.    He ran fast through the woods himself for a ways.    I followed him on the road.  · I missed him when he was in the woods.    I couldn't say how much liquor he drank and I don't know how much Casey drank.    We went close to three miles from where we left the automobile.    It was in the neighborhood of 3 or 4 o'clock in the afternoon.    We started from Tony's house somewhere about 1 o'clock in his automobile.    It was about 4 o'clock in the afternoon when I left Howard.    It was about three hours after we had left Tony.

"*Q.* Now, where were you when you left Howard?
"*A.* We was north of the Besaw hill.
"*Q.* How did you come to leave him?
"*A.* He told me to.
"*Q.* You thought it safe to leave him?

"*A.* He told me, he said, 'You go home.'

"*Q.* I am not asking you what he told you. You thought it was safe to leave him, did you?

"*A.* Yes, I did.

"*Q.* You stated on your direct-examination here that he appeared perfectly normal to you?

"*A.* He did in a way, yes, as near as I knew. * * *

"*Q.* Where was Casey when you left Howard and him together?

"*A.* Sitting by a stump.

"*Q.* And where was Howard?

"*A.* He was standing in the road by the side of me.

"*Q.* And was he talking?

"*A.* He was.

"*Q.* And how far was this place that you left him there in company with Casey, as you understood, from where afterwards the body was found?

"*A.* Somewhere about sixty rods, somewhere along in that."

No one saw Howard again that night. The next morning his dead body was found lying in the road. There was about eight inches of snow on the ground and the weather had turned cold in the night. Doctors testified that death was caused by acute alcoholism and exposure to the cold.

Counsel for the defendant contends that the facts proven by the people are insufficient to sustain a conviction of involuntary manslaughter. He argues that the defendant is not guilty of manslaughter because the selling of intoxicating liquor is a felony, and that where death results from the commission of a felony, the homicide is not manslaughter but murder. Counsel apparently overlooks the fact that the violation of the liquor law is only criminal because prohibited by statute. It is not a common-law felony. It is not inherently criminal. Notwithstanding the fact that the statute has declared it to be a felony, it is an act not in itself directly and naturally dangerous to life. So if one in the commission of such an act unintentionally causes the death of another, he is

not guilty of murder, nor is he guilty of manslaughter unless he commits the act carelessly and in such a manner as manifests a reckless disregard of human life. The act of selling or furnishing intoxicating liquor in violation of the statute is what the law terms an act *malum prohibitum,* a crime existing only by reason of statutory prohibition. An unlawful act of this character which unintentionally causes the death of another, is not in itself a sufficient basis for a charge of involuntary manslaughter. But the commission of such an unlawful act will constitute manslaughter if performed under such circumstances as to supply the intent to do wrong and inflict some bodily injury. This is well illustrated in those cases where one kills another while driving an automobile at an unlawful rate of speed. The unlawful act of exceeding the speed limit is not in itself criminal but if done in a careless manner, in reckless disregard of the safety of others and death results, the offender is guilty of involuntary manslaughter. The rule is well stated in *Thiede* v. *State,* 106 Neb. 48 (182 N. W. 570, 15 A. L. R. 237), as follows:

"We believe the rule to be that though the act made unlawful by statute is an act merely *malum prohibitum* and is ordinarily insufficient, still when such an act is accompanied by negligence or further wrong so as to be in its nature, dangerous, or as to manifest a reckless disregard for the safety of others, then it may be sufficient to supply the wrongful intent essential to criminal homicide when such an act results in the death of another, may constitute involuntary manslaughter."

In *State* v. *Reitze,* 86 N. J. Law, 407 (92 Atl. 576), the court said:

"It is only for the natural and probable result of a wrongful act that a wrongdoer is liable, even civilly. And this is so, at least as far as criminal responsibility is concerned, even if the act is prohibited by the legis-

lature, provided it be merely *malum prohibitum* and
not *malum in se* and is not dangerous in itself."

Applying these principles to the instant case the
conviction cannot be sustained unless the unlawful
act of selling and giving intoxicating liquor to the
deceased was committed under circumstances showing
an intent to inflict injury or a reckless disregard for
the safety of the deceased. If the liquor which the
defendant furnished the deceased and his companions
was dangerous for use as a beverage, if it was of
greater potency than ordinary whisky, or if it con-
tained poisonous ingredients as is the case with some
moonshine whisky, the defendant having distilled it
himself would be charged with a knowledge of its
dangerous character, and would be guilty of in-
voluntary manslaughter.    Our first inquiry then is
as to the character of the whisky in question.    The
prosecution was unable to secure a chemical analysis
of it, so that we can only judge of its dangerous
character by the effect it had upon those who drank
it.    The two men who were with the deceased and the
defendant himself drank a considerable quantity of
it and experienced no more serious results than would
follow the drinking of the same quantity of ordinary
whisky.    The deceased drank six glasses of it while
at defendant's home; he drank from the jug in the
automobile; he drank again on the road, but showed
no ill effects other than ordinary intoxication.    When
his brother, Edward Harkness, left him he told Ed-
ward to go on home and that he would stay to help
Casey Poort, who was asleep by a stump.    Edward
says that when he last saw him he was standing by
the road, seemingly normal and able to take care of
himself.    This was three or four hours after he
first partook of the liquor.    In view of these facts
we cannot say that the whisky furnished by the de-
fendant was of greater potency or possessed any

more poisonous ingredients than ordinary intoxicating liquor.  The unfortunate results would probably have been the same if the deceased had over-indulged in a like quantity of ordinary whisky.  The record is barren of any evidence that would convert the unlawful act of the defendant into the crime of manslaughter.

The conviction is reversed and a new trial granted.

CLARK, C. J., and BIRD and SHARPE, JJ., concurred with MCDONALD, J.  STEERE, J., concurred in the result.

WIEST, J. (*concurring*).  I concur in the result.  I am not in accord with the broad holding that an intent to do wrong or to inflict some bodily injury is necessary in all cases to constitute the crime of involuntary manslaughter.  Acts of recklessness, in wanton disregard of consequences, resulting in a killing, in order to constitute involuntary manslaughter, require knowledge of wrong doing on the part of the offender, to remove the same from misadventure or mere accident, but a killing, committed while violating a penal statute, requires no finding that the offender intended to do wrong or to inflict some bodily injury.  This is my understanding of the holdings of this court.  *People v. Harris*, 214 Mich. 145, 151 (16 A. L. R. 910) ; *People v. Ryczek*, 224 Mich. 106; *People v. Barnes*, 182 Mich. 179, 192, 199.

MOORE and FELLOWS, JJ., concurred with WIEST, J.