PEOPLE v DUMAS

Docket No. 102355. Argued December 10, 1996 (Calendar No. 4). Decided May 20, 1997.

Rodney Dumas and Patrick Smith were charged in the Detroit Recorder's Court with first-degree felony murder. Smith was also charged with possession of a firearm during the commission of an armed robbery. Both were tried jointly, although separate juries were impaneled. Thereafter Rodney Dumas was convicted of first-degree felony murder, Vera Massey Jones, J. The Court of Appeals, REILLY, P.J., and R. B. BURNS and C. L. HORN, JJ., affirmed in an unpublished opinion per curiam (Docket No. 153325). The defendant appeals, asserting that the trial court improperly instructed the jury that the intent required for a felony-murder conviction can be inferred from the intent to commit the underlying felony.

In an opinion by Justice RILEY, joined by Chief Justice MALLETT and Justice BRICKLEY, and an opinion by Justice CAVANAGH, the Supreme Court *held*:

The trial court's instructions were error, permitting the jury to convict the defendant of murder without determining that he had a malicious state of mind in committing the crime. Trial courts should refrain from using the erroneous instruction regarding malice even if it is followed by further clarifying instructions.

Justice RILEY, joined by Chief Justice MALLETT and Justice BRICKLEY, would further hold that the jury instructions violated *People v Aaron*, 409 Mich 672 (1980), permitting the jury to convict the defendant of murder without determining that he had a malicious state of mind in committing the crime. The instructions failed to fairly present the issues to be tried by the jury and did not adequately protect the defendant's rights.

Under *Aaron*, to prove murder, the people must demonstrate that the defendant acted with malice in causing the death of another. Malice is the intent to kill, the intent to do great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of the defendant's act is to cause death or great bodily harm. The malice necessary for a felony-murder conviction cannot be inferred from the intent to commit the underlying felony

alone; however, the jury may infer a malicious intent from the facts and circumstances of the underlying felony.

In this case, the instructions, examined in isolation, were erroneous because the jury could conclude that it may infer the defendant's intent to create a high risk of death or great bodily harm with the knowledge that death was the likely result from the intent to commit the underlying crime alone, even if the circumstances and facts of the crime did not support that finding. The word "may" generally denotes discretion, and the instruction provides no qualification of when this discretion may be exercised. Further, the instructions, even if read in their entirety, failed to fairly present the issues the jury was to try.

Trial courts must refrain from using the erroneous instruction that the jury may infer malice from the commission of the underlying offense without qualifying when the jury may make this inference. Where the trial court decides to give such an instruction, it must further explain at the same time that the jury may only infer this malice if the facts and circumstances of the intent to commit the underlying crime warrant the inference. A trial court should take its instructions from *Aaron* if it decides to elaborate on its instructions on the nature of malice. The trial court has discretion to determine whether there is a need for additional instructions on malice beyond that supplied in *Aaron*.

The evidence was not overwhelming, yet the instructional errors allowed the jury to infer the defendant's malicious intent alone from his intent to participate in the underlying robbery regardless of the facts and circumstances of the robbery. The jury may have decided, with the endorsement of the instructions, that the defendant was guilty because he intended to commit the robbery. The entire case turned on whether the defendant was malicious, the same point on which the jury was wrongly instructed.

Justice CAVANAGH, concurring, stated that the challenged instruction irreparably tainted the jury's deliberations, constituting error requiring reversal per se.

Reversed and remanded.

Justice BOYLE, joined by Justice WEAVER, dissenting, stated that the instruction of the jury adequately protected the defendant's rights by fairly presenting the issue to be determined. Given the evidence, the arguments, and the instruction as a whole, there is no reasonable possibility that the jury thought the defendant could be convicted without a finding beyond a reasonable doubt that he acted with malice in respect to the killing of the decedent. The trial judge did not charge the jury that the defendant could be convicted of felony murder if it found that the defendant committed a statu-

tory felony and death resulted. Nor did the judge charge the jury that it could find malice from the intent to commit the underlying felony alone. The instruction given correctly defined second-degree murder five times and advised the jury twice that the defendant's intent may be proved by what he said or did, how he did it, or any other facts and circumstances in evidence.

Justice KELLY took no part in the decision of this case.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Carolyn M. Breen*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for the defendant.

Amicus Curiae:

*Dorean Marguerite Koenig* for Criminal Defense Attorneys Association of Michigan.

RILEY, J. In this appeal, we are asked to examine the jury instructions given by a trial court in a felony-murder case in light of our decision in *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980). The instructions in the instant case violated *Aaron* by allowing the jury to convict defendant of murder from his intent to commit the underlying crime alone. The jury did not need to determine that defendant had a malicious intent before determining that he was guilty of murder. Therefore, we would reverse the Court of Appeals decision to affirm defendant's conviction and would remand for a new trial.

I. FACTS AND PROCEEDINGS

On June 21, 1991, defendant Rodney Dumas and codefendant Patrick Smith entered the garage of Porter Thomas, a self-employed mechanic, to commit an armed robbery. A customer, Eddie Fultz, was present at the garage at the time. When the two men entered the shop, defendant approached Fultz. Smith pushed Thomas into the garage. Fultz explained that he did not work there, but defendant told him to go into the office and said "nothing [will] happen to you." Defendant gestured to his hip, suggesting that he might have a gun. When defendant looked back toward the garage, Fultz fled by climbing over a seven-foot fence. As he climbed the fence, he heard Thomas repeatedly say in a frightened voice, "I don't have any money." Before hitting the ground, Fultz heard a single gunshot. Fultz returned to the garage to see defendant and Smith running toward their vehicle. After Thomas, wounded in the chest, emerged from the garage carrying a rifle, he collapsed. He died from the wound, which was made by a .357 or .38 hollow point bullet.

Defendant and Smith were charged with felony murder. MCL 750.316; MSA 28.548. Smith was also charged with possession of a firearm during the commission of a felony. MCL 750.227b; MSA 28.424(2). In January 1992, defendant and Smith were tried jointly, although separate juries were impaneled. Evidence of similar acts was presented at trial against defendant, indicating that he and Smith had been involved previously in three other armed robberies together. This evidence was introduced for the purpose of demonstrating defendant's knowledge that Smith was carrying a gun during the robbery of

Thomas. Defendant did not testify and did not call any witnesses. In closing argument, defense counsel conceded that defendant intended to commit the robbery, but rested his defense on the theory that defendant did not know that Smith had an intent to shoot the victim. Counsel asked that the jury convict defendant of the lesser offense of attempted armed robbery.[1]

The only issue in this appeal is the adequacy of the trial court's instructions to the jury. Defendant claims that the trial court erred in giving the following instruction:

> If you find that the defendant consciously intended to commit, attempted to commit or assist others in the commission of the crime of robbery or larceny, you may infer that he knowingly created a high risk of death or serious bodily injury with knowledge that it probably would cause death.

---

[1] In particular, defense counsel argued:

[M]y client did in fact go in to Porter Thomas' establishment on that date. He did in fact intend to rob that establishment.

I'm going to tell you this right straight up. My client did not inten[d] to kill anyone. He did not know that Patrick Smith intended to kill anyone. He did not act in a way which was careless and reckless which would justify a finding that in fact he participated in this murder of Porter Thomas.

*     *     *

We are not denying that he intended an attempt[ed] robbery on that day. What we are saying is that, ladies and gentlemen, his actions, that is accompanying Mr. Smith does not amount to proof that he's responsible, that he had the malice, that he had the intent that would lead you to be able to find him guilty of felony murder.

Defendant objected to this instruction, but the trial court gave the instruction over his objection.[2]

On January 27, 1992, the jury found defendant guilty of first-degree felony murder,[3] and he was sentenced to life in prison without an opportunity for parole, as required under MCL 750.316; MSA 28.548.

Defendant appealed his conviction in the Court of Appeals, which affirmed in an unpublished per curiam opinion, concluding:

> A review of the instructions as a whole reveals that the court properly instructed the jurors on the issue of intent. The court read the requisite elements of felony murder. The court included an instruction which addressed the act of murder. The court next instructed the jurors on the fifth element outlined in the CJI2d, which explained that in order to convict a defendant of first-degree felony murder, the killing must occur "as a result of the crime of larceny or robbery." Finally, the court gave its instruction on transferred intent. Although in isolation, the alleged erroneous instruction may have somewhat blurred the concept of intent to commit the underlying felony and intent to cause great bodily injury, the given instructions, when read as a

---

[2] Defense counsel argued that this instruction would confuse the jury:

By instructing the jury as you have indicated here that there is an inference from the underlying felony, you are in effect, you are saying all you have to do is show that he had a plan, was participating in an armed robbery, and that is enough to establish malice.

And I think that it is extremely confusing. It is unnecessary to do that. The standard certainly is set out. That is what the standard of the prosecution, what standard the prosecution must meet in these cases is clear from *Aaron*.

Your Honor, I think this does nothing but confuse them and in fact disregards the dictates of *Aaron* and other cases.

[3] The other impaneled jury was unable to reach a verdict in Smith's trial. He was retried and convicted of felony murder. The trial court sentenced him to mandatory life in prison. The Court of Appeals affirmed his conviction, and this Court has denied leave to appeal. 450 Mich 992 (1996).

whole does not amount to reversible error. [Issued January 11, 1995 (Docket No. 153325), slip op at 2.]

Defendant sought leave to appeal, and this Court granted leave, "limited to whether the trial court improperly instructed that the intent required for a felony-murder conviction can be inferred from the intent to commit the underlying felony."[4]

## II. ANALYSIS

### A

In reviewing a trial court's jury instructions, this Court examines the instructions as a whole, and, even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried. *People v Kalder*, 284 Mich 235, 241-242; 279 NW 493 (1938). This Court will not reverse a conviction for an instruction that is not " 'strictly correct' " where we " 'can clearly see that the jury could not have been misled by it' . . . ." *People v Dupie*, 395 Mich 483, 488-489; 236 NW2d 494 (1975), quoting the syllabus from *People v Scott*, 6 Mich 287 (1859).

### B

To prove murder, the people must demonstrate that the defendant acted with malice in causing the death of another. *Aaron, supra* at 728. Malice is defined as (1) the intent to kill, (2) the intent to do great bodily harm, or (3) a wanton and wilful disregard of the likelihood that the natural tendency of the defendant's act is to cause death or great bodily harm, i.e.,

---

[4] 451 Mich 898 (1996).

depraved-heart murder. *Id.* In 1980, in *Aaron,* this Court abolished the common-law felony-murder rule, which had previously established that a defendant was guilty of murder for a homicide that occurred during the course of a felony if he had the intent to commit the underlying felony, insofar as this rule equated malice with the intent to commit the underlying felony. See *id.* at 727-728. Rather, the people must prove one of the three intents that define malice in every murder case. *Id.* at 728. After this decision, the felony-murder rule continued to exist in part by statute, operating only to elevate a second-degree murder conviction to first-degree murder if the murder occurred during the commission of one of the statutorily enumerated crimes. *Id.* at 734. At the time of defendant's trial, the first-degree murder statute provided in full:

> Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life. [MCL 750.316; MSA 28.548.][5]

---

[5] In 1994, the Legislature modified this statute, 1994 PA 267, effective October 1, 1994, which now provides in pertinent part:

> (1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:

> \*   \*   \*

> (b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping.

In abolishing the felony-murder rule from the common law, this Court explained that the malice necessary for a felony-murder conviction cannot be inferred from the intent to commit the underlying felony alone. See *Aaron, supra* at 727-728.[6] See also *People v Kelly*, 423 Mich 261, 273; 378 NW2d 365 (1985).[7] However, we noted that the jury may infer a malicious intent from the facts and circumstances of the underlying felony:

> The facts and circumstances involved in the perpetration of a felony may evidence an intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm; however, the conclusion must be left to the jury to infer from all the evidence. [*Aaron, supra* at 728-729. See also *Kelly, supra* at 273.][8]

Five years after *Aaron* was decided, this Court, in *Kelly*, addressed a similar issue as the one raised in

---

[6] In *Aaron, supra* at 728, this Court stated as follows:

Although the circumstances surrounding the commission of the felony may evidence a greater intent beyond the intent to commit the felony, or a wanton and willful act in disregard of the possible consequence of death or serious injury, *the intent to commit the felony, of itself, does not connote a "man-endangering-state-of-mind."* [Emphasis added.]

[7] In *Kelly, supra* at 273, we stated:

We therefore [in *Aaron*] decided that the malice necessary for a felony-murder conviction could not be inferred *merely* from the intent to commit the underlying felony. [Emphasis in original.]

[8] A jury may infer the malice necessary for murder from the intent to commit the underlying felony *where that intent evidences a malicious state of mind,* but may not do so by the fact alone that a defendant committed the underlying felony and a death resulted. In properly inferring malice from the intent to commit the underlying crime, the jury must consider whether that intent evidenced a malicious state of mind.

this appeal. Notwithstanding the ruling of *Aaron*, the trial court in *Kelly* provided an instruction regarding malice that was virtually the same as the one contested in the instant case,[9] in a felony-murder trial in which the underlying felony was robbery.[10] As in this case, the defendant objected to the instruction, but the trial court overruled the objection. *Kelly, supra* at 269-270, n 2.

In reviewing the particular instruction, we concluded that the instruction, read in isolation, "may be inaccurate." *Id.* at 264. Nevertheless, in reviewing the instructions in their entirety, we determined that the instructions merely identified the underlying crime as a factor for the jury to consider in determining whether the defendant was guilty of malice. *Id.* at 273. We noted that the contested instruction only created a "permissive inference" and not a mandatory one. *Id.* at 273, n 4. We also noted that the trial court had (1) properly instructed the jury that malice is an essential element of murder, (2) given a proper instruction on the definition of malice, and (3) instructed the jury that it must consider all the facts and circumstances in determining the defendant's state of mind. We reasoned that the instruction that the jury must consider all the facts and circumstances "clarified any ambiguity in the instruction objected to by explicitly noting in the proximately following

---

[9] In *Kelly, supra* at 273, the trial court provided this instruction:

"If you find that the defendant consciously intended to commit, attempted to commit or assisted another in the crime of robbery, you may infer that he knowingly created a very high risk of death with knowledge that it probably would cause death."

[10] The trial judge in *Kelly* was the same trial judge as in this case, Detroit Recorder's Court Judge Vera Massey Jones.

paragraphs the factors the jury had to consider to find malice." *Id.* at 274-275. Consequently, we concluded that the instructions as a whole "correctly informed the jury of the *Aaron* standard" and that the instructions did not *require* the jury to find malice only on the basis of the intent to commit the underlying felony. *Id.* at 275. In concluding that the given instructions "were accurate," *id.* at 276, we contrasted *Aaron*, and its companion case, *People v Thompson*, in which the instructions regarding the inference to draw was *automatic* rather than merely permissive. *Kelly, supra* at 276-277.[11]

C

In the instant case, defendant was tried for felony murder where the people claimed that the underlying crime was larceny or armed robbery.[12] As in *Kelly*, the trial court provided the proper instruction that the people must prove one of three intents to prove the requisite intent for murder:

> Murder is the killing of one person by another with a certain mental element. For murder, the defendant must have intended to kill, or having intended to do great bodily harm,

[11] On appeal, the people ask this Court to overrule *Aaron* as an unwarranted judicial intrusion into a legislative function, arguing that the Court has changed the meaning of the term "murder" in MCL 750.316; MSA 28.548 even though the judiciary has no role in the development of the meaning of this statute other than to determine legislative intent. The Legislature provided no definition of murder, but relied on the common-law definition when it enacted the statute in 1931. We decline to examine this claim because it is outside the scope of our order granting leave. See 451 Mich 898 (1996). This issue was raised for the first time in the people's brief after this Court granted leave to appeal.

[12] In the information, the people charged defendant with felony murder, with larceny as the underlying crime. The trial court determined that it would give instructions on larceny and armed robbery as an underlying crime because armed robbery is also a kind of larceny.

or the defendant must have intended to create a very high
risk of death or great bodily harm with knowledge that
death or great bodily harm was the probable result of his
acts . . . .

In fact, the trial court repeated this definition of mal-
ice in its instructions on first- and second-degree mur-
der four times.

The trial court then gave the elements for larceny
before it gave the instruction that defendant objected
to at trial and challenges on appeal:

> If you find that the defendant consciously intended to
> commit, attempted to commit or assist others in the com-
> mission of the crime of robbery or larceny, you *may infer*
> that he knowingly created a high risk of death or serious
> bodily injury with knowledge that it probably would cause
> death. [Emphasis added.][13]

---

[13] Judge Jones operated on the apparent misapprehension that this
Court approved this instruction in *Kelly*. After defense counsel objected
to the disputed instruction in the instant case, Judge Jones referred to
*Kelly* by erroneously asserting that this Court approved the particular
instruction. The colloquy transpired as follows:

*The Court*: Your objection [to the particular instruction] is noted
for the record.

[*Defense Counsel*]: May I argue it?

*The Court*: You may argue, but that's the case. That's the one I
was trying to remember. That is my case. It came down and got
approval in that language.

But go ahead.

[*Defense Counsel*]: *Kelly* says. It doesn't say really, although they
affirmed in that case. They said that that particular instruction was
inaccurate, but they said given . . . the totality of the instruction
given in that case, it wasn't error.

*The Court*: They didn't say that.

[*Defense Counsel*]: Yes, they did, your Honor.

*The Court*: No. They didn't say it was inaccurate.

[*Defense Counsel*]: The Appeals Court said that sentence in iso-
lation may be inaccurate.

This particular instruction, examined in isolation, is erroneous because the jury could conclude that it *may* infer defendant's intent to create a high risk of death or great bodily harm with the knowledge that death was the likely result from the intent to commit the underlying crime *alone*, even if the facts and circumstances of the crime did not support that finding.[14] The word "may" generally denotes discretion, see *AFSCME v Highland Park Bd of Ed*, 214 Mich App 182, 186; 542 NW2d 333 (1995), and the instruction provides no qualification of when this discretion may be exercised. Hence, the instruction violates *Aaron, supra* at 727-728, by allowing the jury to convict defendant for murder without finding that he had a malicious state of mind when he committed the crime.[15] This particular instruction should not be given by trial courts.

---

*The Court:* Maybe this sentence in isolation may be inaccurate, but it was not in isolation.

[14] The dissent argues that the jury was not told that it could infer the malice necessary for a murder conviction from the intent to commit the underlying crime alone. See *post* at 415, 420. The dissent, however, ignores the plain meaning of the trial court's instruction that the jury may infer malice if it "find[s] that the defendant consciously intended to commit, attempted to commit or assist others in the commission of the crime of robbery or larceny . . . ." The instruction identifies this one finding alone, i.e., that defendant committed the underlying crime, as adequate by itself, without any modification or qualification, to enable the jury to find malice. By this instruction, the jury need not evaluate the quality of this intent or make any other additional finding before concluding that defendant was guilty of malice.

[15] The dissent mischaracterizes this opinion by contending that we wrongly interpret this instruction as a *requirement* that the jury find malice from defendant's intent to commit the underlying felony alone. *Post* at 412-413. Rather, the instruction empowers, but does not require, the jury to find malice from defendant's intent to commit the underlying crime alone. The instruction does not place conditions on when the jury may exercise this power to infer malice. Consequently, the instruction runs

In *Kelly*, the trial court gave the erroneous instruction, but then immediately followed it with further instructions on intent, that the jury may infer an intent to kill from the manner of use of a dangerous weapon, and that the jury must consider all facts and circumstances to determine the defendant's state of mind:

> "Now, you must consider all of the facts and circumstances in determining the state of mind of the defendant at the time of the act. This may be inferred from the kind of weapon used, the nature of the wounds inflicted, the circumstances surrounding the killing, the acts, conduct and language of the accused or any other circumstance in evidence." [*Id.* at 268.]

We approved the instructions in their entirety because, in context, the general tenor of the instructions was to convey to the jury that it could infer the defendant's malice from the commission of the underlying crime if the circumstances and facts warranted the inference. *Kelly, supra* at 275.[16]

However, in the instant case, unlike *Kelly*, the trial court did not immediately follow the erroneous instruction with a proper one regarding the fact that the jury *must* consider all the facts and circumstances in determining the defendant's state of mind. Instead, the trial court provided instructions on the

---

afoul of *Aaron* by authorizing the jury to find malice without requiring it to determine whether defendant in fact acted with malice.

[16] In reaching this conclusion, we do not wish to encourage trial courts to use these instructions. The trial court should aspire to give a completely accurate statement of the law in its instructions to the jury and should not be satisfied with instructions that are, as a whole, merely adequate. Hence, we would direct trial courts to refrain from using the erroneous instruction regarding malice even if the court follows this instruction with further instructions that clarify it.

elements of assault with intent to commit armed rob-
bery, attempted armed robbery, and accessory after
the fact. After these instructions, the trial court gave
an instruction similar to the one that had clarified the
erroneous instruction in *Kelly*, but this one did not
refer to the felony-murder charge and only informed
the jury that it *may* consider the facts and circum-
stances in determining defendant's intent:

> Now the crimes of armed robbery, larceny, assault with
> intent to rob and the common law offense of accessory
> after the fact requires proof of a specific intent. This means
> that the prosecution must prove not only that the defendant
> did certain acts, but that he did the acts with the intent to
> bring about a particular result.
>
> For the crime of larceny, armed robbery, assault with
> intent to rob[,] this means that the prosecution must prove
> that the defendant intended to permanently deprive the
> owner, that is Mr. Porter Thomas[,] of the property.
>
> *The defendant's intent may be proved by what he said,
> what he did, how he did it or any other facts and circum-
> stances in evidence.*
>
> For the crime of common law accessory after the fact the
> People must prove that at the time of the offense the
> defendant specifically intended to hinder the other person's
> arrest or the other person's trial or the person's punishment.
> And for the crime of attempted armed robbery, this means
> that the prosecution must prove that the defendant
> intended to commit the crime of armed robbery.
>
> *Once again the defendant's intent may be proved by
> what he said, what he did, how he did it or any other facts
> and circumstances in evidence.* [Emphasis added.]

The two italicized instructions, examined in context,
appear to refer only to the specific intent crimes iden-
tified by the trial court immediately before, and not to
the felony-murder charge the trial court described ten

pages earlier in the transcript. Moreover, the fact that the instruction did not require the jury to consider the facts and circumstances, but merely allowed the jury to consider them, further limits the likelihood that this instruction could have clarified the erroneous instruction.

Furthermore, the jury instructions given later by the trial court only compounded the error of the inaccurate instruction given earlier by stating in the people's theory of the case that the people claimed that defendant was guilty of wanton and wilful disregard for others by his "intentional participation in an armed robbery":

> It is the People's position that on June 21, 1991 in the late afternoon the defendants, Rodney Dumas and Patrick Smith, acting together with a common purpose, went to the Porter Thomas garage in Detroit with the specific intent then of robbing or stealing money from Mr. Thomas. Defendant Dumas knew that Mr. Smith had a gun because when they recently committed three prior armed robberies Mr. Smith always possessed a firearm.
>
> It is the People's theory that during the attempt to rob or steal Mr. Thomas' money, he offered som[e] form of resistance, and Patrick Smith shot and killed him with either a .38 caliber or a .357 caliber handgun.
>
> [It] is the People's theory that when Mr. Smith shot Mr. Thomas in the upper left chest, it was his intent to overcome whatever resistance Mr. Thomas offered.
>
> Prior to and at the time of the attempted robbery of Mr. Thomas it was a common understanding of the Defendant Dumas and Mr. Smith that if there was any resistance from Mr. Thomas, Mr. Smith would use his handgun to meet or overcome it.
>
> It is the People's theory that it made little difference if any to the defendant Dumas whether Mr. Thomas was killed or suffered great bodily harm. The objective was to end any resistance.

At the time Porter Thomas was fatally shot by Mr. Smith, Defendant Dumas concurred in the killing or in the infliction of the great bodily harm as part of their common purpose, i.e., to rob and avoid apprehension.

*In any event*[,] *Defendant Dumas by his intentional participation in an armed robbery acted in a wilful and wanton manner that had the natural tendency to cause Mr. Thomas' death.* [Emphasis added.]

The trial court's instructions on the people's theory initially indicated that the people claimed that defendant had agreed by "common understanding" before the robbery to kill someone or to inflict great bodily harm on someone if during their robbery they encountered any resistance. This is perfectly consistent with *Aaron, supra* at 728-729. However, the trial court added another argument, separated by the phrase "[i]n any event," that defendant, because he intentionally participated in the underlying felony, acted in a wanton and wilful manner. This argument indicated that the jury may conclude that defendant acted with malice by the fact alone that he participated in the robbery. *Aaron* requires more. *Aaron* requires that the people prove that the facts and circumstances of the crime evidenced a wanton and wilful disregard for others. *Id.* at 728-729.[17] Therefore, the instruction on the people's theory confirmed the previous erroneous instruction by asking the jury to

---

[17] Even if we considered the fact that this armed robbery was inherently dangerous to human life, this Court in *Aaron, supra* at 727, addressed this point by explaining that "[t]hose [crimes] which may be seen as inherently dangerous to human life when viewed in the abstract may not be so dangerous when viewed in light of the circumstances of a particular case." Thus, defendant's intent to commit this armed robbery under *Aaron* did not by itself denote that he had an intent to do so with malice.

infer a malicious intent irrespective of whether the facts and circumstances warranted the inference.[18]

These statements were part of the instructions to the jury. See MCR 2.516(A)(2)[19] and MCR 2.516(B)(3).[20] They were the last instructions the trial court gave before giving the jury instructions regarding its duty to pick a foreperson.

For these reasons, in the instant case, we conclude that the instructions, even read in their entirety, failed to fairly present the issues the jury was to try. We

---

[18] The dissent argues that the trial court's statement of the people's theory of the case was consistent with *Aaron*. See BOYLE, J., *post* at 414-418. The dissent ignores the point that the jury may have taken the trial court at its word and concluded that defendant acted with malice because of the fact alone that he intentionally participated in the armed robbery. This is inconsistent with the analysis from *Aaron*, *supra* at 728. See n 6. Of course, as noted by the dissent, the instructions would have been consistent with *Aaron* if the trial court had informed the jury that the people's theory of the case was that defendant acted with malice because the facts and circumstances surrounding his intent to commit the armed robbery evidenced a malicious intent. See BOYLE, J., *post* at 417 (defendant "may be found liable if he aided and abetted the principal and there is evidence that he shared the principal's intent to kill or inflict great bodily harm, or if he aided and abetted the principal and there is evidence that he himself acted with wanton or wilful disregard of the natural tendency of his behavior"). The trial court did not so instruct the jury here.

[19] MCR 2.516(A)(2) provides in full:

In addition to requests for instructions submitted under subrule (A)(1), after the close of the evidence each party shall submit in writing to the court a statement of the issues and may submit the party's theory of the case as to each issue. The statement must be concise, be narrative in form, and set forth as issues only those disputed propositions of fact which are supported by the evidence. The theory may include those claims supported by the evidence or admitted.

[20] MCR 2.516(B)(3) provides in pertinent part:

Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, *if a party requests as provided in subrule (A)(2), that party's theory of the case.* [Emphasis added.]

cannot say that the jury would not have been misled by the particular errors of the trial court. See *Dupie, supra* at 488-489. We would order all trial courts to refrain from using the erroneous instruction that the jury may infer malice from the commission of the underlying offense without qualifying when the jury may make this inference. Where the trial court decides to give an instruction that the jury may infer malice from the commission of an underlying crime, it should further explain at the same time that the jury may only infer this malice if the facts and circumstances of the intent to commit the underlying crime warrant the inference. A trial court should take its instructions from this Court's analysis in *Aaron, supra* at 728-729, if it decides to elaborate on its instructions on the nature of malice.[21] We, of course, would leave to the trial court's discretion to determine whether there is a need for additional instructions on the question of malice beyond the definition of malice supplied in *Aaron, supra* at 728.

D

The instructional error in this case was preserved but did not involve a constitutional claim. Thus, it is preserved, nonconstitutional error. Under Michigan law, we shall not set aside a verdict unless such an error resulted in a miscarriage of justice:

---

[21] In *Aaron, supra* at 728-729, we held in part:

> The facts and circumstances involved in the perpetration of a felony may evidence an intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm; however, the conclusion must be left to the jury to infer from all the evidence.

No judgment or verdict shall be set aside or reversed or a
new trial be granted by any court of this state in any crimi-
nal case, *on the ground of misdirection of the jury,* or the
improper admission or rejection of evidence, or for error as
to any matter of pleading or procedure, unless in the opin-
ion of the court, after an examination of the entire case, it
shall affirmatively appear that the error complained of has
resulted in a miscarriage of justice. [MCL 769.26;   MSA
28.1096 (emphasis added).]

We explained in *People v Mateo,* 453 Mich 203, 206;
551 NW2d 891 (1996),   that this statute does not
require "a literal definition" of miscarriage of justice.
Where there is overwhelming evidence of a defend-
ant's guilt, there is no affirmative evidence of a mis-
carriage of justice. *Id.* at 207.

In the instant case, the key point was whether
defendant harbored a malicious intent when he com-
mitted the armed robbery. The evidence on this point
was not overwhelming. For this reason, we cannot
conclude that the error on the law governing malice
in the jury instructions was harmless. The people and
defendant focused their closing arguments on the
question whether defendant had a malicious intent
when he intended to participate in the armed robbery.
The people argued in closing:

If by chance it is suggested well, maybe [defendant] was
willing to go along with the robbery, and he knew that
Smith had a gun. Maybe he didn't believe that Smith would
shoot to kill or to seriously injure.

Members of the jury, if that be his state of mind, he is
still guilty of felony murder. *Because he would know what
Smith would do in the event resistance arose, and he was
willing to be a party to it. He put in force along with
Smith the chain of events that led to the death of Porter
Thomas.* [Emphasis added.]

In other words, the people claimed that defendant was guilty of depraved-heart murder because he knew that Smith would use force and defendant nevertheless agreed to assist him. This argument is consistent with *Kelly, supra* at 278-279,[22] and concentrates on defendant's state of mind in agreeing to commit the armed robbery. Similarly, defendant contested the same point:

> We are not denying that he intended an attempt[ed] robbery on that day. What we are saying is that, ladies and gentlemen, his actions, that is accompanying Mr. Smith does not amount to proof that he's responsible, that he had the malice, that he had the intent that would lead you to be able to find him guilty of felony murder.

> *      *      *

> You are to deal with my client's conduct, and I ask you to consider only what he did and only what he is responsible for. These are unfor[e]seen results on his part. *He had no reason to believe that Mr. Smith was going to do what he did.* [Emphasis added.]

Thus, the parties directed the jury's attention to whether defendant knew that Smith would use the weapon to overcome any opposition by Thomas.

Yet, the trial court's instructional errors allowed the jury to infer defendant's malicious intent alone from his intent to participate in the underlying robbery regardless of the facts and circumstances of the rob-

---

[22] In *Kelly, supra* at 278-279, we stated as follows:

> [I]f the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron.*

bery. The jury was instructed to follow the law as the trial court gave it to the jury. Consequently, the jury may have followed the law as given by the trial court and not reached a conclusion about whether defendant agreed with Smith to overcome resistance with force. Instead, it may have decided, with the endorsement of the instructions, that he was guilty because he intended to commit the robbery. Regardless of whether we believe that defendant was guilty of this crime, this factual question was one for the jury. The entire case turned on whether he was malicious, and on this same point the jury was wrongly instructed. We would reverse and remand for a new trial.

### III. CONCLUSION

We would reverse the Court of Appeals decision to affirm defendant's conviction. The trial court's jury instructions permitted the jury to convict defendant of murder without determining that he had a malicious state of mind in committing a crime. The instructions violated *Aaron.* Consequently, the instructions failed to fairly present the issues to be tried by the jury and did not adequately protect defendant's rights. We would remand for a new trial.

MALLETT, C.J., and BRICKLEY, J., concurred with RILEY, J.

CAVANAGH, J. (*concurring*). I concur in the lead opinion's reversal of the Court of Appeals and remand for new trial. In so doing, I join only in the lead opinion's conclusion that "[t]he trial court's jury instructions permitted the jury to convict defendant of murder without determining that he had a malicious state of mind in committing a crime," *ante,* p 411, and with

the lead opinion's statement "direct[ing] trial courts to refrain from using the erroneous instruction regarding malice even if the court follows this instruction with further instructions that clarify it." *Ante*, p 403, n 16.

The challenged instruction irreparably tainted the jury's deliberations. In my opinion, this erroneous instruction constitutes error requiring reversal per se.

BOYLE, J. (*dissenting*). Because I disagree with the lead opinion's conclusion that the instructions given violated the holding of *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980), by "allowing the jury to convict defendant of murder from his intent to commit the underlying crime alone," I respectfully dissent. *Ante*, p 392. The trial judge did not charge the jury that the defendant could be convicted of felony murder if it found that defendant committed a statutory felony and death resulted. Nor did the judge charge the jury that it could find malice from the intent to commit the underlying felony *alone*. The instruction given correctly defined second-degree murder five separate times and the instruction the lead opinion finds was error actually advised the jury twice that the defendant's intent may be proved by what he said or did, how he did it, "or any other facts and circumstances in evidence."

The lead opinion's contention that the factfinder might have understood this instruction to require it to find malice from intent alone because it "did not require the jury to consider the facts and circumstances, but merely allowed the jury to consider them"[1] is illogical. Since the jury was allowed to con-

---

[1] *Ante*, p 405.

sider all the facts and circumstances in evidence in determining whether defendant created a high risk of death or serious bodily injury, ipso facto it was not *required* to find malice from the intent to commit the felony alone.

Given the evidence, the arguments, and the instructions as a whole, there is no reasonable possibility the jury thought that defendant could be convicted without a finding beyond a reasonable doubt that Mr. Dumas himself acted with malice in respect to the killing of the decedent.[2] The instruction adequately protected the defendant's rights by fairly presenting the issue to be determined, *People v Dupie*, 395 Mich 483; 236 NW2d 494 (1975). Assuming the instruction was error on the key point, whether there was evidence of defendant's malice with regard to the homicide of the deceased, there was overwhelming evidence that defendant Dumas acted with wanton and wilful disregard of the principal's intent to kill or cause great bodily harm or himself acted with wanton and wilful disregard of the substantial likelihood that his behavior could cause death or great bodily harm. I would affirm the conviction, MCL 769.26; MSA 28.1096.

I agree with the lead opinion to the extent that it reads *Aaron* to stand for the principle that the jury may find malice from the intent to commit an underlying felony where that intent evidences a malicious state of mind regarding a killing that occurs in the course of a felony, *ante*, p 398, n 8.

---

[2] Defense counsel specifically argued that it was not foreseeable that someone would be harmed because "on all three of those (prior) occasions, Mr. Smith, although armed, and Mr. Dumas, who accompanied him according to that testimony, they did not hurt anyone."

In *Aaron*, this Court abolished the common-law felony-murder rule that the mens rea necessary for murder was satisfied by proof of an enumerated or other abstractly dangerous felony and a resulting death. *Aaron, supra* at 715-716, n 103.[3] *Aaron* held that the people must prove the mens rea of second-degree murder, that is, malice,[4] plus the felony, for statutory first-degree murder, MCL 750.316; MSA 28.548. The teaching of *Aaron* is that malice, with regard to a homicide, may not be imputed from the underlying felony. *Aaron* does not hold that the intent to commit the underlying felony does not have probative significance regarding whether defendant had a "man-endangering state of mind" with regard to the death.

Thus, a jury may not be instructed that it may find first-degree felony murder from the intent to commit the enumerated felony alone and a resulting death, because an intent to commit the felony is not the equivalent of the malicious state of mind necessary for second-degree murder. After *Aaron*, the mens rea necessary for the felony is in every instance different than the mens rea required for murder, and no longer

---

[3] The lead opinion describes this rule as equating malice with the intent to commit the underlying felony. I agree, if what is meant is that malice was presumed and that defendant was responsible for an unintended or unexpected death if the felony was intended and death resulted.

[4] As Justice LEVIN observed in *People v Morrin*, 31 Mich App 301, 323; 187 NW2d 434 (1971), malice is a jury question and in explaining the concept:

> A judge could, for example, charge that the defendant is guilty of the crime of murder if the jurors find, beyond a reasonable doubt, that he killed the victim and that he actually intended to kill the victim or (where relevant), although he did not actually intend to kill, he actually intended to inflict great bodily harm or engaged in behavior the natural tendency of which is to cause death or great bodily harm.

will the law allow the latter to be conclusively proven from the former. Stated otherwise, the intent to commit the felony is necessary, but not sufficient, to show malice regarding the killing.

It does not follow, however, that if the underlying felony requires an intent that exhibits a man-endangering state of mind, that intent might not be evidence of malice in regard to a resulting killing. Thus, while I agree with the lead opinion that *Aaron* requires that the people prove that each co-felon has malice because "[i]t is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for the unforeseen and unagreed-to results of another felon," *Aaron*, *supra* at 731, the jury was not instructed that it could find malice from this intent alone. Further, the court did not err in advising the jury regarding the people's theory that

> in any event Defendant Dumas by his intentional participation in an armed robbery acted in a wilful and wanton manner that had the natural tendency to cause Mr. Thomas' death.

There was no dispute that defendant knew the principal was armed, nor was there any factual dispute that defendant had participated in three prior armed robberies with codefendant. As observed in *Aaron*,

> In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, the felony-murder rule is unnecessary because liability may be established on agency principles. [*Id.* at 731.]

Professors Perkins and Boyce describe the malice
necessary for second-degree murder as a

[man-endangering state] of mind which includes (1) an
intent to kill, or (2) an intent to inflict great bodily injury, or
(3) an intent to do an act in wanton and wilful disregard of
an unreasonable human risk, (i.e. the wilful doing of a wan-
ton act under such circumstances that there is obviously a
plain and strong likelihood that death or great bodily injury
may result), or (4) an intent to perpetrate a dangerous fel-
ony. [Criminal Law (3d ed), p 73.]

With the abrogation of the commission of the enumer-
ated felonies as a proxy for malice with regard to a
killing, the enumerated felonies now stand on the
same ground as other second-degree murders, as to
which no special qualifications regarding the finding
of malice need be given.

Aid or encouragement to another who is actually
perpetrating a felony makes the aider guilty of the
crime if he knows, or has reason to know of the crim-
inal intention of the other, Perkins at 743, or if he
himself acted despite the absence of a showing of
knowledge of the other's intent, with the state of
mind necessary for conviction. An aider and abettor
may be found guilty on proof of the intent necessary
to be convicted as a principal, and if the aider and
abettor participates in a crime with knowledge of the
principal's intent to kill or cause great bodily harm,
he is acting with at least "wanton and wilful disre-
gard" sufficient to support a finding of malice. *People
v Kelly*, 423 Mich 261, 278; 378 NW2d 365 (1985).

The instructions on the people's theory correctly
encompassed these two versions of accessory liability
in a common-law murder. The jury was advised that

the codefendant accessory may be found liable if he aided and abetted the principal and there is evidence that he shared the principal's intent to kill or inflict great bodily harm, or if he aided and abetted the principal and there is evidence that he himself acted with wanton or wilful disregard of the natural tendency of his behavior.

Footnote 17 of the lead opinion's analysis seems to be grounded on the Court's explanation in *Aaron* of the rationale for abolishing the rule. The Court stated that those enumerated felonies that "may be seen as inherently dangerous to human life when viewed in the abstract may not be so dangerous when viewed in light of the circumstances of a particular case." *Id.* at 727. The lead opinion concludes from this statement that a defendant's intent to commit the armed robbery does not, by itself, denote malice with regard to a killing. If this statement means that the intent to commit the felony is not as a matter of law the equivalent of the malice necessary for murder, I agree. However, I read this statement as a rejection of the view of some courts that apply the felony-murder rule by classifying the felony in the abstract to determine whether it is inherently dangerous,[5] and as the further declaration that in Michigan malice is a question of fact in all circumstances. This conclusion is fortified by juxtaposing the former statement with the Court's later observations that

> [a] defendant who only intends to commit the felony does not intend to commit the harm that results and may or may not be guilty of perpetrating an act done in wanton or will-

---

[5] *State v Thompson,* 280 NC 202; 185 SE2d 666 (1972), Perkins & Boyce, Criminal Law (3d ed), p 66.

ful disregard of the plain and strong likelihood that such harm will result [*id.* at 728,]

and that

[a] jury can properly infer malice from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. [*Id.* at 729 (emphasis deleted).]

In my view, the proper interpretation of the sentence is that intent to commit a felony is not the legal equivalent of malice with regard to the killing, that malice with regard to the killing is an essential element of all murder, which is a question of fact with respect to each defendant for the trier of fact, "and, as all questions of fact, may be established by direct evidence, circumstantial evidence, or both." *Aaron, supra* at 745-746 (RYAN, J., concurring in part and dissenting in part).

Thus, because death may be accidental or wholly unanticipated, a jury may not be told, no less with the enumerated felonies than with any other murder, *People v Maher,* 10 Mich 212, 218; 81 AD 781 (1862), that it must convict if it finds the mens rea of the felony.[6] However, malice may be inferred from all the facts and circumstances, including the intent to commit the underlying felony.

It is no more error to advise the jury that a defendant's knowing participation in an armed robbery may

---

[6] Where the facts so warrant, the jury should be advised that merely because a defendant intended to commit a felony, does not require a conclusion that the defendant acted with malice in respect to the killing. The archetypal example is the getaway driver in a robbery where there is no evidence the driver knew the perpetrators were armed.

be evidence of malice, than would it be to charge a jury that the defendant's knowing participation in a felonious assault, or knowing participation in an assault with intent to do great bodily harm, or knowing participation in a plan to kill A where B was killed, is error. The factual finding of the actus reus of the felony has probative force for the ultimate issue the jury must determine: whether the defendant acted with malice with regard to the killing.

I therefore disagree both with the lead opinion's conclusion that the jury was told it could find malice from the intent to commit the felony alone and that the jury must always be told that it is to do something (that is, consider the facts and circumstances) that it has no reason to think it could not do.[7]

Since intent to kill, intent to do serious bodily injury or depraved heart murder must be proven in every murder prosecution, an intent to commit the underlying felony that has an evidentiary bearing on the existence of the ultimate issue of malice is a proper consideration for the factfinder.[8] To be sure, in a given case, such as where a codefendant claims no prior knowledge of facts that indicate the principal's malice with respect to the killing, and there is a contested issue regarding whether the defendant himself acted with wanton and wilful disregard of the consequences, it may be both appropriate and necessary to

---

[7] It is at this point that the strained construction of the instruction given becomes most obvious. The entire thrust of the jury instructions was that in resolving any question, the jury must examine all the facts and circumstances in evidence.

[8] Parenthetically, where the only evidence of malice is the commission of a felony that does not evidence a man-endangering state of mind, the prosecution has not made out a case of murder to submit to the jury. *People v Pavlic*, 227 Mich 562; 199 NW 373 (1924).

charge that the defendant may not be found guilty merely because he participated in the felony. Where, as here, it was undisputed that defendant intended to commit a robbery and knew the principal was armed, and the jury is correctly advised that it must find beyond a reasonable doubt that the defendant had malice with regard to the killing, there is no error.

*Aaron* does not direct that the jury consider *only* circumstantial evidence of mens rea, i.e., all the facts and circumstances (intent to do great bodily harm or reckless disregard of the plain and strong likelihood of such a result). Indeed, the lead opinion agrees that direct evidence, in the form of defendant's intent, of a man-endangering state of mind may be considered. *Aaron* does not require "more" in the jury instruction the court today mandates. The "more" that *Aaron* requires is a jury instruction that treats the malice element of a murder occurring in the course of an enumerated felony like any other second-degree murder and a special instruction where the proofs so require. The jury was correctly advised five separate times in the instant case regarding the malice element and was not told it could find malice from the intent to commit the underlying felony. I would affirm the conviction.[9]

WEAVER, J., concurred with BOYLE, J.

KELLY, J., took no part in the decision of this case.

---

[9] While I do not agree the instruction was error, *People v Kelly, supra,* I agree with the lead opinion that it should not be given without clarification. Because the instruction is unnecessary, it invites claims of error on appeal.