CAVANAGH, J.
(concurring in result only). I concur in the result reached by the majority; however, I write separately because I disagree with the majority’s rationale. Unlike the majority, I believe that a defendant can be convicted of involuntary manslaughter when the committed act is a felony, but only when the felony does not naturally tend to cause death or great bodily harm.[1]
*23 The manslaughter statute, MCL 750.321, provides the following: “Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court.” No distinction is made in the statute between voluntary manslaughter and involuntary manslaughter.[2]
Because the statute at issue, MCL 750.321, does not define manslaughter, the common-law definition must be used. People v Townes, 391 Mich 578, 588; 218 NW2d 136 (1974). Involuntary manslaughter is defined as “ ‘the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.’ ” People v Herron, 464 Mich 593, 604; 628 NW2d 528 (2001), quoting People v Ryczek, 224 Mich 106, 110; 194 NW 609 (1923).
I disagree with the majority’s claim that this Court did not provide a definition in Ryczek but merely offered “guidance” and “a useful tool. ” Ante at 11, 21. I find this claim to be disingenuous. This Court in Ryczek, supra at 109, stated that the term “involuntary manslaughter” is “well defined” and then went on to provide the definition. This Court in Herron, supra at 604, stated that “the definition [of involuntary manslaughter] is left to the common law. . . . This Court has defined the common-law offense of involuntary manslaughter as . ...” (Emphasis added.) Further, in Townes, supra at 590, this Court similarly stated that in Ryczek, “the Court approved the following definition of involuntary *24 manslaughter ...(Emphasis added.) While the majority now chooses to characterize the definition as a descriptive tool, I believe it is clear that the Ryczek definition is, in fact, a definition.
I believe a proper reading of the definition of involuntary manslaughter dictates that a person cannot be convicted of involuntary manslaughter when he commits a felony that naturally tends to cause death or great bodily harm. If the defendant commits a felony that does not naturally tend to cause death or great bodily harm, such as larceny of an ornamental tree, MCL 750.367, he can be convicted of involuntary manslaughter if death to a person results. This conclusion is consistent with this Court’s prior decisions.
This Court has previously rejected the argument that a defendant cannot be convicted of involuntary manslaughter merely because the act committed was a felony. See, e.g., People v Carter, 387 Mich 397, 422; 197 NW2d 57 (1972); People v Pavlic, 227 Mich 562, 565-567; 199 NW 373 (1924). In Pavlic, a man died after drinking liquor sold by the defendant. At the time, selling intoxicating liquor was a felony. This Court stated that violating the liquor law is only criminal because it is prohibited by statute; it is a malum prohibitum act.[3] “It is not inherently criminal. Notwithstanding the fact that the statute has declared it to be a felony it is an act not in itself directly and naturally dangerous to life.” Id. at 565. The commission of a malum prohibitum act “will constitute manslaughter if performed under such circumstances as to supply the intent to do wrong and inflict some bodily injury.” Id. at *25 566. Selling intoxicating liquor was insufficient to support the manslaughter conviction in Pavlic because the defendant did not possess an intent to inflict injury or a reckless disregard for the safety of the victim. However, if the circumstances had been different, for example, if the liquor had contained certain poisonous ingredients that the defendant had known about, the defendant would have been guilty of involuntary manslaughter. Id. at 567.
My reasoning is consistent with past opinions and orders of this Court, and does not require a finding, as the majority now does, that this Court’s order in People v Rode, 449 Mich 912 (1995), was impliedly overruled by this Court’s opinion in People v Mendoza, 468 Mich 527, 534; 664 NW2d 685 (2003). In Rode, this Court’s order peremptorily reinstated the defendant’s convictions of second-degree murder and felony-firearm possession on the basis of the reasoning of the dissenting judge in the Court of Appeals. The dissenting judge argued:
Because shooting at the other vehicle full of people was “an unlawful act” amounting to “a felony and would naturally tend to cause death or great bodily harm,” it was not conduct within the definition of involuntary manslaughter for a killing committed “in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm ....” [Rode, supra at 914 (Levin, J., dissenting, citing Jansen, J., concurring in part and dissenting in part, unpublished opinion per curiam, issued March 3, 1995 [Docket No. 179942]).]
In essence, this Court adopted the dissenting judge’s statement that shooting at a car full of people is not involuntary manslaughter because that act constitutes a felony that would naturally tend to cause death or great bodily harm. Further, in Datema, supra at 597, this Court stated, “where a defendant commits an unlawful act that is malum prohibitum or a lawful act *26 executed negligently that causes death, involuntary manslaughter may be premised on criminal negligence.” While this Court was considering the misdemeanor-manslaughter rule in Datema, the general principles articulated are relevant to the issue at hand.
Finally, the underlying felony in this case — mixing a harmful substance in a drink — does not naturally tend to cause death or great bodily harm.[4] There are numerous harmful substances that could be mixed into a drink that would not naturally lead to death or great bodily harm. Unfortunately, GHB (gamma hydroxybutrate) was mixed in the girls’ drinks in amounts that led to one girl’s death, but that does not mean that defendants’ underlying felony is one that naturally tends to cause death or great bodily harm.[5] Therefore, I believe that the prosecutor had to specifically allege and prove, as he did, that defendants were grossly negligent.
Therefore, while I agree with the result reached by the majority, I disagree with the majority’s rationale. Accordingly, I concur in the result only.
KELLY, J., concurred with CAVANAGH, J.

 Although I still believe that “[g]ross negligence should be recognized as the mens rea standard for all common-law forms of involuntary manslaughter,” as expressed in my dissent in People v Datema, 448 Mich 585, 609; 533 NW2d 272 (1995), this interpretation of the law was not shared by a majority of this Court.

 “There is but one offense of manslaughter in this State.” People v Rogulski, 181 Mich 481, 494; 148 NW 189 (1914).

 “An act is malum prohibitum if it is an ‘act which, is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law Datema, supra at 597 n 13, quoting Black’s Law Dictionary (6th ed).

 MCL 750.436(1) states, in pertinent part, “A person shall not... (a) [w]illfully mingle a poison or harmful substance with a food, drink, nonprescription medicine, or pharmaceutical product... knowing or having reason to know that the food, drink, nonprescription medicine, pharmaceutical product, or water may be ingested or used by a person to his or her injury.”

 Ghb can have a range of effects from memory loss to death. In low doses, the drug can reduce inhibitions, which is presumably why the drug was mixed in the girls’ drinks. See United States Drug Enforcement Administration, <www.dea.gov> (accessed July 7, 2004); Executive Office of the President, Office of National Drug Control Policy, <www.whitehousedrugpolicy.gov> (accessed July 7, 2004).
I also note that there may certainly be cases in which the act of mixing ghb into a person’s drink is proven to he with malice; however, in this case, the prosecutor did not seek to prove malice.