# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL MCCOY,

        Defendant-Appellant.

UNPUBLISHED
June 30, 2016

No. 326142
Wayne Circuit Court
LC No. 14-008095-FC

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder, MCL 750.83, armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, felon in possession of a firearm (felon-in-possession), MCL 750.224f(2), and possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. Defendant was sentenced to 25 to 50 years' imprisonment for the assault with intent to commit murder conviction, 10 to 20 years' imprisonment for the armed robbery conviction, 6 to 10 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, 2 to 5 years' imprisonment for the felon-in-possession conviction, and 5 years' imprisonment for the felony-firearm conviction, to be served consecutive to his sentences for the other offenses. We affirm.

In August 2014, Lawrence Martin pulled into a gas station parking lot. He testified that he noticed two vehicles near the gas pumps, a Mercury Marquis and a Ford Escort. He also saw defendant and a man with braids near the gas pumps. Martin testified that he had known defendant since childhood, but they had recently had a falling out. Martin believed that a reason for the falling out was that he had burned down a crack house that defendant had set up near Martin's grandmother's house.

Martin testified that he went into the gas station to buy a makeshift crack pipe for someone else. He told the clerk to hurry up because he was "beefing with those guys out here." When Martin walked outside, defendant and the man with braids surrounded him. Martin testified that defendant ordered him to "[r]un them pockets," so he handed over a phone and some money. He testified that another man came out the gas station, walked up to him, and pointed a pistol at him. Martin testified that the man with the gun asked "what up now" and called him a derogatory name. Martin then tussled with defendant, the man with braids, and the

-1-

man with the gun. According to Martin, during the tussle, defendant ordered the man with the gun to shoot Martin. The man shot Martin in the leg.

Martin limped to the street where his friend Tracy Jackson was driving down the street and saw him. Jackson rolled down her window and Martin told her he had just been shot. At that point, the two vehicles from the gas station, the Mercury Marquis and the Ford Escort, pulled up behind Jackson's car. Jackson testified that defendant told her "not to let [Martin] in the car because he's on some bullshit." She testified that Martin jumped into her car through an open back seat window and she drove off quickly because Martin told her there were people shooting at them. Jackson's car was shot at and a bullet hole was discovered in the rear passenger-side door.

Defendant argues that there is insufficient evidence to sustain his convictions because Martin was unreliable as a witness.[1] Defendant suggests that the portions of Martin's testimony that could be corroborated by other evidence were the only portions of his testimony that could be relied upon. However, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). As such, we will not discount Martin's testimony and will instead view it in the light most favorable to the prosecution and make credibility choices in favor of the jury's verdict. See *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

Because defendant was convicted on an aiding and abetting theory, we review the requirements of aiding and abetting. To establish liability under an aiding-and-abetting theory, the prosecution must prove: "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v Henderson*, 306 Mich App 1, 10; 854 NW2d 234 (2014) (citation and internal quotation marks omitted). "An aider and abetter's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

Here, there was sufficient evidence to establish that the crimes of assault with intent to murder and assault with intent to commit great bodily harm were committed. The elements of assault with intent to murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Henderson*, 306 Mich App at 9 (citation and internal quotation marks omitted). The elements of assault with intent to commit great bodily harm are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (citation and quotation marks omitted; emphasis in

---

[1] We review de novo challenges to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

original).  Intent to do great bodily harm is "an intent to do serious injury of an aggravated nature."  *Id.* (citations and internal quotation marks omitted).  Here, Martin's testimony established that defendant ordered the man with the gun to shoot him and he was then shot.  After Martin fled to the street, defendant told Jackson not to allow Martin into the vehicle.  Martin jumped in the vehicle anyway and Jackson sped away.  They were pursued by defendant's vehicle and another vehicle and were shot at.  There was a bullet hole in the vehicle.  A jury may infer intent to kill from the use of a dangerous weapon.  *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993); *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997) (opinion by RILEY, J).  Viewing this evidence in the light most favorable to the prosecution, there was sufficient evidence to establish that the man with the gun intended to kill Martin when he shot him.  It can also be inferred that the person who shot at Jackson's car intended to do great bodily harm, especially as Martin had entered through a back window and there was a bullet hole in one of the back doors.  Thus the first element to convict on an aiding and abetting theory was met.  Further, there was sufficient evidence that defendant provided actual aid or encouragement to the man with the gun given that he instructed him to shoot Martin and then jointly pursued Martin after he got in Jackson's vehicle.  In particular, surveillance video from the location showed defendant's vehicle making a u-turn immediately after Jackson sped off, followed closely by another vehicle with the man with the gun inside.  Further, it can be inferred that defendant intended the crime to be committed when he ordered the man with the gun to shoot Martin and then aided him in pursing Jackson.  Accordingly, there was sufficient evidence to support defendant's convictions for assault with intent to commit murder and assault with intent to do great bodily harm.

There was also sufficient evidence to convict defendant of armed robbery.  The elements of armed robbery are:  "(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon."  *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).  "[I]n the course of committing a larceny" includes acts done "*in an attempt to commit the larceny*, *or* during the commission of the larceny, *or* in flight or attempted flight after the commission of the larceny, *or* in an attempt to retain possession of the property."  *People v Williams*, 288 Mich App 67, 73-74; 792 NW2d 384 (2010) (citation and quotation marks omitted; emphasis in original).  Martin testified that defendant took items and money from his pockets.  The evidence showed that the man with the gun pointed the gun at Martin and then shot him after a tussle.  Thus, the evidence showed that defendant aided the man with the gun by taking Martin's possessions, and then provided encouragement by ordering the man with the gun to shoot him.  Further, the evidence established that defendant had the requisite intent given that defendant's acts showed direct participation in the robbery when he took items and money from Martin.

There was also sufficient evidence to support defendant's conviction for felony-firearm.  MCL 750.227b(1) provides that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony . . . ."  "Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person,

that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v Moore*, 470 Mich 56, 70-71; 679 NW2d 41 (2004). The evidence established that the man with the gun committed a felony, namely assault with intent to commit murder, while in possession of a pistol. Thus, there is evidence that felony-firearm was committed. Second, defendant told the man with the gun to shoot Martin, which is sufficient to establish that defendant gave encouragement that assisted in the commission of the felony-firearm violation. That same evidence also supports that he had knowledge that the man with the gun intended to commit the crime. As such, there was sufficient evidence to support defendant's felony-firearm conviction.

Finally, there was sufficient evidence to establish that defendant was guilty of felon-in-possession. MCL 750.224f(2) provides:

> (2) A person convicted of a specified felony *shall not* possess, *use*, transport, sell, purchase, carry, ship, receive, or distribute *a firearm in this state* until all of the following circumstances exist:
>
> (a) The expiration of 5 years after all of the following circumstances exist:
>
> (*i*) The person has paid all fines imposed for the violation.
>
> (*ii*) The person has served all terms of imprisonment imposed for the violation.
>
> (*iii*) The person has successfully completed all conditions of probation or parole imposed for the violation.
>
> (b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored under section 4 of 1927 PA 372, MCL 28.424. [Emphasis added.]

There was no evidence that the man with the gun had a prior felony conviction. However, defense counsel stipulated that defendant had a prior felony conviction and that his right to possess a firearm had not been restored at the time of the shooting. Further, viewing the evidence in the light most favorable to the prosecution, defendant used the firearm when he directed the man with the gun to shoot Martin and the man with the gun then shot Martin.

Defendant next argues that his 25-year minimum sentence is unconstitutional because it constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution or because it constitutes cruel or unusual punishment under the Michigan

Constitution.[2]  He also cites *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015) for the proposition that his sentence is not reasonable.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments[.]"  US Const, Am VIII.  The Michigan Constitution similarly prohibits the infliction of "cruel or unusual punishment[.]"  Const 1963, art I, § 16.  "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution."  *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (citation and quotation marks omitted).  Moreover, "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual."  *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).  Further, "a sentence that fulfills the principle of proportionality . . . constitutes a reasonable sentence under *Lockridge*."  *People v Steanhouse*, 313 Mich App 1, 47-48; ___ NW2d ___ (2015).  Defendant does not challenge the scoring of the guidelines, and it is undisputed that his sentence was within the guidelines as scored.  As such, his sentence is presumptively proportionate, constitutes a reasonable sentence, and does not constitute cruel or unusual punishment.  See *Bowling*, 299 Mich App at 558; *Steanhouse*, 313 Mich App at 47-48.

Affirmed.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien

---

[2] This issue is unpreserved because defendant did not argue below that his sentences were unconstitutionally cruel or unusual.  See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013).  As such, our review is for "plain error affecting defendant's substantial rights."  *Id*. at 557.