**C O U R T   O F   A P P E A L S**

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAHAN SATATI GREEN,

Defendant-Appellant.

UNPUBLISHED
December 19, 2017

No. 332835
Wayne Circuit Court
LC No. 15-005901-01-FH

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of transporting a person for prostitution, MCL 750.459, two counts of accepting the earnings of a prostitute, MCL 750.457, and criminal conspiracy (conducting a criminal enterprise), MCL 750.159i. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 20 to 40 years' imprisonment for each conviction. We affirm.

This appeal arises out of a prostitution ring run by defendant between 2006 and 2012 in southeastern Michigan. Defendant raises several issues on appeal. Although we do not find defendant's claims to be meritorious, each is addressed in turn.

I. INSTRUCTIONAL ERROR

Defendant cites to two instances where the jury was either erroneously instructed, or where a jury instruction should have been given, but was not. First, defendant takes issue with the non-standard jury instruction given with respect to the two counts of accepting earnings from a prostitute. Second, defendant argues that the trial court erroneously declined to give the accomplice witness testimony instruction, or alternatively, the disputed accomplice testimony instruction. With respect to both of defendant's claims, we disagree.

Claims of instructional error are reviewed as a whole de novo to determine whether any error occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). The trial court's determination "that a jury instruction applies to the facts of the case" is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). In the event of an instructional error, reversal is only warranted if "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative."

-1-

*People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (citation and quotation marks omitted).

MCR 2.512(D)(2) requires the jury be instructed using the Michigan Model Criminal Jury Instructions if "(a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party." Defendant was charged with two counts of accepting the earnings of a prostitute under MCL 750.457. At first blush, it appears that Michigan Model Criminal Jury Instruction (M Crim JI) 20.35 applies to the charge of accepting earnings from a prostitute. However, there are two ways to be convicted of accepting earnings from a prostitute under MCL 750.457: (1) Either a person "knowingly accepts, receives, levies, or appropriates any money or valuable thing without consideration of the earnings of any person engaged in prostitution," or (2) a person "knowing a person to be a prostitute . . . lives or derives support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of a prostitute[.]" See MCL 750.457(1), which states, in relevant part:

> [a]ny person who knowingly accepts, receives, levies, or appropriates any money or valuable thing without consideration from the proceeds of the earnings of any person engaged in prostitution, *or* any person, knowing a person to be a prostitute, who lives or derives support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of a prostitute . . . is guilty of a felony[.]

Defendant was charged with the latter—knowing two of his victims to be prostitutes, defendant lived or derived support or maintenance from their prostitution earnings.

However, M Crim JI 20.35 only takes into account defendants who have knowingly accepted, received, levied, or appropriated any money or valuable thing without consideration, as opposed to defendants, such as the defendant in this case, who knowingly accepted money earned through prostitution and used it to live on, or to derive support or maintenance from. See M Crim JI 20.35, which reads:

> (1) The defendant is charged with the crime of making a profit from the earnings of a prostitute. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> (2) First, that the defendant [received / took] [money / something of value] from a prostitute. A prostitute is a person who does sexual acts for money.

> (3) Second, that the defendant knew that the woman was a prostitute when the defendant [received / took] the [money / valuable thing].

> (4) Third, that the defendant knew when [he / she] [received / took] it that the [money / valuable thing] had been earned by prostitution.

> (5) Fourth, that the defendant did not give the prostitute anything of value in exchange. If you find that the defendant did give something of value to her, you must decide whether the defendant made a profit from her earnings, that is, whether the defendant [received / took] some of her earnings without giving anything in return. The evidence must convince you that the defendant intended

to make a profit and actually [received / took] [money / something of value] without giving anything in return.

We therefore conclude that M Crim JI 20.35 was inapplicable here.

Contrary to the assertion in his appellate brief, defendant did not specifically request the model instruction at trial, and therefore the trial court was not required to read the standard jury instruction. MCR 2.512(D)(2)(c). Likewise, defendant does not argue on appeal that the model criminal jury instruction *should* have been utilized. In fact, a non-standard jury instruction on the charge of accepting earnings from a prostitute is sufficient so long as the instruction fairly presented the issues to be tried and sufficiently protected defendant's rights. *People v Dumas*, 454 Mich 390, 396; 563 NW2d 31 (1997).

The following non-standard instruction was read to the jury:

[t]he defendant is charged in counts five and count [sic] six with accepting the earnings of a prostitute. To prove this charge, the [p]rosecutor must prove each of the following elements beyond a reasonable doubt: First, the defendant lived or derived support or maintenance from the earnings of a prostitute. . . . A prostitute is a person who does sexual acts for money. Second, defendant knew that [the prostitute] was a prostitute when defendant received the earnings. And third, the defendant knew when he received the earnings, it had been earned by prostitution.

The same language was used with respect to the second victim. Defendant takes issue with the fact that the non-standard instruction read to the jury omitted the element of consideration, which defendant argues applies to both provisions of MCL 750.457. Accordingly, defendant argues, the non-standard jury instruction failed to adequately instruct the jury. We disagree.

As written, the plain language of MCL 750.457 only requires that the jury evaluate whether consideration was given when a defendant is charged with knowingly accepting, receiving, levying, or appropriating money or valuables from the earnings of prostitutes, with the knowledge that that person was a prostitute. In comparison, the statute does not expressly require the jury to consider whether consideration was given when a defendant is charged with living or deriving support or maintenance from the earnings of the prostitution of a prostitute, with the knowledge that that person is a prostitute. Had the Legislature intended consideration to be an element of both provisions of the statute, it would have written MCL 750.457 that way. They did not. Because the language of MCL 750.457 is unambiguous, this Court must "presume that the Legislature intended the meaning clearly expressed "[and] no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Barrera*, 278 Mich App 730, 736; 752 NW2d 485 (2008) (citation and quotation marks omitted). Accordingly, the trial court was not required to instruct the jury on consideration because it was not an element of the charged offense.

Further, when the non-standard instruction read to the jury is reviewed as a whole, there is no error. *Kowalski*¸ 489 Mich at 501. The jury was instructed that the prosecutor must prove beyond a reasonable doubt that defendant lived, or derived maintenance or support, from the earnings of either victim. The jury was further instructed that the prosecutor must prove beyond

a reasonable doubt that defendant knew the victims were prostitutes at the time he accepted their earnings, and that defendant further knew that the earnings were received from prostitution.

Next, defendant takes the position that the evidence at trial supports the conclusion that one of defendant's victims was actually an accomplice, and therefore, the trial court abused its discretion by not issuing the disputed accomplice testimony instruction or the accomplice witness testimony instruction found in M Crim JI 5.5 and 5.6, respectively.

Defendant cites to the victim's testimony in support of his position. Specifically, defendant argues that the victim considered defendant to be her boyfriend, and that she had been involved in prostitution before meeting defendant. The evidence at trial showed that the victim was the registered secretary of Creative Expectations, the corporation defendant used as a front for his criminal enterprise, and that she had a debit card in her name linked to the Creative Expectations bank account. Further, the victim would answer telephone calls from clients and set up dates for herself and the other women involved.

However, even if the accomplice instructions should have been given, "reversal [is] not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through defense counsel's cross-examination of the alleged accomplice." *People v Young*, 472 Mich 130, 139; 693 NW2d 801 (2005). On direct examination, the victim detailed her involvement in defendant's business. On cross-examination, she admitted that she received full immunity from the Attorney General's office on July 13, 2015, in exchange for her assistance with the investigation of defendant and for her testimony at trial. Additionally, it was on cross-examination that the jury heard that the victim was the secretary of Creative Expectations, and used the debit card in her name that was linked to the Creative Expectations bank account to make purchases with defendant's permission. The victim's testimony suggests that she may have been an accomplice, not just a victim, and that her testimony may not be credible where she was offered immunity from prosecution. Therefore, no accomplice witness testimony instruction was required. *Id.*

Further, the jury was instructed that when considering the credibility of each witness that it may consider whether, "there have been promises, threats, suggestions, or other influences that affect how the witness testified. Does the witness have any special reason to tell the truth or any special reason to lie?" It was, therefore, not an abuse of discretion for the trial court to refrain from instructing the jury on the victim's possible status as an accomplice where her credibility was sufficiently challenged in front of the jury on cross-examination. *Young*, 472 Mich at 139.

## II. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor committed error rising to the level of misconduct when during her closing argument, she characterized the evidence at trial as being "undisputed." Defendant moved for a mistrial on that basis, and argues that the trial court abused its discretion by denying that motion. We disagree.

Defendant failed to preserve this issue by making a contemporaneous objection and requesting a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) (citation omitted). Although defense counsel objected to the prosecutor's characterization

-4-

of the evidence while moving for a mistrial, defendant must have objected to the prosecutor's allegedly improper comments during the prosecutor's closing argument to preserve the issue for appeal. *People v Kevorkian*, 248 Mich App 373, 432; 639 NW2d 291 (2001).

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo[.]" *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). However, "[b]ecause the alleged error was not preserved by a contemporaneous objection and a request for a curative instruction, appellate review is for plain (outcome-determinative) error." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Plain error is shown by proving, "(1) [the] error must have occurred, (2) the error was plain, i.e. clear or obvious, and (3) the . . . error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Generally, to show that an error affected substantial rights, it must be proven that "the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or pubic reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476, quoting *Callon*, 256 Mich App at 329. "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476, quoting *Callon*, 256 Mich App at 329-330.

"The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. It is defendant's burden to demonstrate that a miscarriage of justice resulted from the prosecutor's error. *Id*. Each claim of prosecutorial misconduct is decided on a case-by-case basis, and must be examined by the reviewing Court in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010).

Defendant argues that during her closing argument, the prosecutor improperly characterized the evidence as being "undisputed," which defendant contends impermissibly shifted the burden of proof. We agree with the prosecution that defendant's argument is without merit, because this Court has previously determined in *Callon* that a "prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment," and likewise, does not shift the burden of proof. *Callon*, 256 Mich App at 331.

Additionally, in his statement of the questions presented, defendant claims that the trial court abused its discretion by denying his motion for a mistrial on this basis. Beyond mentioning that his motion was denied, defendant fails to elaborate on this assertion in his brief on appeal. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). This issue, is therefore, abandoned. Regardless, we conclude that the trial court did not abuse is discretion by denying defendant's motion for a mistrial where the prosecutor's statements, made during closing argument, did not rise to the level of prosecutorial misconduct.

## III. EVIDENTIARY ERROR

Defendant raises several evidentiary errors on appeal. However, not all are preserved, and most, if not all, are abandoned. Regardless, we address each of defendant's claims on the merits, although we find none to be meritorious.

To preserve an evidentiary challenge for appeal, the defendant must challenge it before the trial court on the same grounds that he challenges it on appeal. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Defendant must also make the substance of any excluded evidence known to the trial court in order to preserve the admissibility of the evidence for this Court's review. MRE 103(a)(2).

Only two of defendant's five claims of evidentiary error were preserved by objecting in the trial court on the same grounds that he raises on appeal. First, defendant objected to the preclusion of testimony that other agencies, besides the Attorney General, the prosecuting agency in this case, declined to prosecute defendant during a final conference on October 23, 2015. Defendant's objection in the lower court, as well as his objection on appeal, is that precluding that evidence would limit the scope of his cross-examination and ability to explore the motive of various witnesses to lie. Second, in the trial court, defense counsel objected to being precluded from asking one female victim about a letter of immunity given to her by the Attorney General, unless that letter could be produced. Defendant raises the same argument on appeal. All other claims of evidentiary error, however, are unpreserved.

This Court reviews preserved evidentiary claims for an abuse of discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). See also *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998), where our Supreme Court held that a trial court's decision to admit or exclude evidence is discretionary, and should only be reversed when there is an abuse of that discretion. A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Evidentiary errors only require reversal where after an examination of the entire record, it appears more probable than not that the trial court's error was outcome determinative. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). However, unpreserved claims of evidentiary error are reviewed for plain error affecting defendant's substantial rights, under the plain error standard found in *Carines*, and outlined above. *Carines*, 460 Mich at 763-764.

As an initial matter, we note that defendant fails to support his evidentiary claims with case law, statutes, or rules of evidence. In fact, for most of defendant's claims, he simply identifies the error without advancing any argument. As noted, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Therefore, most, if not all, of defendant's claims of evidentiary error are deemed abandoned.

Defendant first argues that the trial court abused its discretion by precluding from evidence testimony that various other agencies, besides the Attorney General, had declined to prosecute defendant. Defendant claims this impermissibly limited his ability to cross-examine witnesses. However, defendant fails to identify any specific instance where his inability to bring

up that multiple agencies had declined to prosecute defendant limited or precluded the cross-examination of any witness, which makes it difficult to ascertain defendant's precise complaint. Therefore, not only is defendant's claim without merit, but it is deemed abandoned because of defendant's failure to adequately brief this issue. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008).

Second, defendant takes issue with the fact that he was precluded from asking a female victim "about her letter of immunity" from the Attorney General, unless that letter could be produced. Although defense counsel was precluded from asking the victim about a letter of immunity on cross-examination, he was able to ask her, over the objection of the prosecutor, if in exchange for her testimony, she received a "special deal." The victim testified, "no." Accordingly, the trial court did not abuse its discretion by requiring defense counsel to provide a copy of the letter of immunity when he was able to get the same information into evidence through the victim's own testimony on cross-examination.

Third, defendant argues that another female victim's testimony, that defendant raped her when she attempted to escape from his control while working in Wisconsin, should have been excluded because it was more prejudicial than it was probative. At trial, defense counsel objected to this testimony as impermissible other-acts evidence.

Pursuant to MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence *may* be admissible to prove "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." MRE 404(b)(1). In order for the other acts evidence to be admissible, the evidence must (1) be offered for a proper purpose, (2) be relevant to an issue of consequence under MRE 402, and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

The prosecution contends that this evidence was relevant to show defendant's "tactics [of] scaring women to perpetrate his criminal conspiracy to exploit their bodies for his monetary gain." We agree. Three female victims testified that defendant would become violent if a woman tried to leave. Accordingly, evidence that defendant raped one of the victims when she tried to leave him in Wisconsin is evidence of defendant's plan, or system, in running his organization. For this reason, it is admissible. MRE 404(b)(1). Further, although the evidence in question is prejudicial, all evidence against a defendant will be prejudicial. Evidence only becomes unfairly prejudicial, and therefore, excludable, when "there is a tendency that evidence with little probative value will be given too much weight by the jury." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). There is no indication that the probative value of this evidence was substantially outweighed by unfair prejudice.

Fourth, defendant takes issue with the fact that United States Homeland Security Special Agent Joshua Edwards was permitted to testify that he "examined two computers [that were removed from defendant's apartment], then prepared disks for use in this matter," but the trial court precluded defense counsel from entering those disks into evidence, leading the jury to

believe that the prosecution had some "mighty fine" evidence. However, this is a mischaracterization of the purpose of Agent Edward's testimony.

Agent Edwards testified that he was responsible for imaging, or duplicating, the hard drives of two computers recovered from the apartment defendant shared with two of his victims. This testimony laid the foundation for United States Homeland Security Special Agent, and lead investigator, Cara Rose's testimony regarding the various photographs and advertisements she recovered from these computers. Put simply, Agent Edward's testimony explained how Agent Rose was able to obtain and view these images and documents. In fact, Agent Edwards testified that he was unaware of what was contained on the hard drives he had imaged. Specifically, Agent Edwards testified, "[b]asically I did the computers and presented [them] to the case agent, so I'm not very familiar with this case." Based on the foregoing, to have admitted the contents of the hard drives at that point in the trial would have been erroneous, as the proper foundation regarding the contents of the hard drives had not yet been laid.

Further, as the prosecution points out in its brief on appeal, defense counsel voluntarily withdrew his request to have the hard drives admitted during Agent Edwards' testimony. Defense counsel informed the trial court that he would "move at a later point when Agent Rose [is] testifying if we need" the rest of the hard drives admitted.

Finally, defendant takes issue with several parts of one female victim's testimony. Defendant first claims that it was impermissible to allow the victim to testify about working for defendant in Wisconsin without allowing defense counsel to impeach her with the statements she made to the Waukesha police. However, defendant *was* able to impeach the victim with those statements. The trial court permitted defense counsel to provide the victim with a copy of the police report detailing defendant's attack on another female victim in Wisconsin. After reading the report to herself, the trial court permitted defense counsel to ask the victim if she recalled making various statements contained within the police report, to which she replied that she did not recall anything that she said to the Waukesha police. Accordingly, defendant's claim is without merit.

Next, defendant argues that defense counsel should have been able to question the victim about her relationship with her attorneys at the Polaris Project at the University of Michigan. Defendant fails to explain what, exactly, could be gained from discussing the victim's relationship with the Polaris Project, especially in light of the fact that she freely testified that the Polaris Project put her in touch with Agent Rose, and in exchange for her cooperation with Agent Rose's investigation, she was granted immunity from prosecution by the Attorney General. Defendant's failure to adequately brief this issue makes it difficult to ascertain his complaint. Therefore, not only is defendant's claim without merit, but again, it is deemed abandoned because of defendant's failure to adequately brief this issue. *Martin*, 271 Mich App at 315.

Finally, defendant takes the position that defense counsel should have been able to question the victim about her child custody dispute with defendant. However, the only matter that defense counsel was precluded from exploring was whether or not a guardian ad litem had been appointed and prepared a report in the custody dispute. On cross-examination, defense counsel was able to bring to light the fact that the victim had obtained a personal protection order

(PPO) against defendant, which prevented defendant from seeing their daughter. The victim admitted on cross-examination that she and defendant were engaged in a custody dispute over their daughter. Again, because of defendant's failure to adequately brief this issue, it is unclear exactly what his complaint is. Accordingly, not only is defendant's claim without merit, but it is deemed abandoned. *Martin*, 271 Mich App at 315.

## IV. SCORING ERRORS

Finally, defendant raises evidentiary challenges to the scoring of prior offense variable (PRV) 5 and offense variable (OV) 12. We find neither to be meritorious.

This Court reviews the trial court's factual determinations supporting the scoring of defendant's sentencing guidelines for clear error. *People v Hardy*, 494 Mich 430, 438-439; 835 NW2d 340 (2013). Those factual determinations must be supported by a preponderance of the evidence. *Id*. Further, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which [this Court] reviews de novo." *Id*. at 438.

First, defendant argues that he was erroneously assessed 20 points for PRV 5, when he should only have been scored 10 points. We agree.

MCL 777.55, the statute governing the scoring of PRV 5, provides, in pertinent part:

(1) Prior record variable 5 is prior misdemeanor convictions or prior misdemeanor juvenile adjudications. Score prior record variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

\* \* \*

(a) The offender has 7 or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20 points

\* \* \*

(c) The offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10 points
[MCL 777.55(1).]

The PSIR reflects that defendant has the following misdemeanor convictions in the state of Michigan: domestic violence, MCL 750.81, disturbing the peace, MCL 750.170, and operating a vehicle without a license, MCL 257.904. Defendant also has one misdemeanor conviction for disorderly conduct from the state of Wisconsin. Accordingly, defendant should only have been scored 10 points for PRV 5.

However, defendant cannot show that this plain scoring error affected his substantial rights. *Carines*, 460 Mich at 763-764. Defendant concedes in his brief on appeal that even with PRV 5 properly scored, he remains at PRV level F, which does not alter his minimum sentencing

guidelines range. Accordingly, because the scoring error does not affect defendant's minimum sentencing guidelines range, he is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).

Next, defendant argues that he was improperly assessed 25 points for OV 12. Specifically, defendant notes that there was no specific 24-hour time period placed on the record to justify scoring OV 12 at 25 points, and argues that because defendant was convicted of conducting a criminal enterprise, any and all acts that occurred as part of that criminal enterprise have already resulted in a conviction. We disagree.

MCL 777.42, the statute governing the scoring of OV 12, provides, in pertinent part, that:

(1) Offense variable 12 is contemporaneous felonious criminal acts. Score offense variable 12 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Three or more contemporaneous felonious criminal acts involving crimes against a person were committed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25 points

\* \* \*

(2) All of the following apply to scoring offense variable 12:

(a) A felonious criminal act is contemporaneous if both of the following circumstances exist:

(*i*) The act occurred within 24 hours of the sentencing offense.

(*ii*) The act has not and will not result in a separate conviction. [MCL 777.42.]

When scoring OV 12, the trial court must "look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010).

The trial court did not make specific findings as to what separate acts or behavior it relied on when scoring 25 points for OV 12. The prosecutor argued at sentencing that Agent Rose had put together a timeline using Creative Expectation's bank statements and various escort advertisements, "regarding the various trips from somewhere in the time-frame of May, 2012, through, I believe it was maybe September or October" of 2012. Therefore, the prosecutor argued, there were *at least* five situations during these three months in which it was clear that defendant was transporting females for the purposes of prostitution, but that only two situations were charged.

The prosecution could have charged defendant with multiple counts of transporting a female for prostitution between 2006 and 2012, but chose to only charge defendant with two instances of transporting a female for prostitution between 2009 and 2012. Only one instance of transporting a female for prostitution was required to establish each conviction. However, three female victims testified at trial that defendant primarily was responsible for continuously

transporting them for "dates," not only all over southeastern Michigan, but also out of state, to Maryland and Wisconsin. The testimony from these three women also established that between 2006 and 2012, defendant transported at least an additional two women for prostitution.

This continuous flow of transporting various females constitutes "separate acts or behavior that did not establish the sentencing offense." *Light*, 290 Mich App at 723. Each time defendant transported a female for prostitution, it constituted a unique crime against a person. Additionally, the testimony at trial established that the women that worked for defendant often worked in pairs, sometimes five or six days per week, seeing multiple clients per day. The preponderance of the evidence therefore established that defendant committed at least three separate acts against a person within 24 hours of the sentencing offense. Therefore, the trial court did not err when it assessed 25 points for OV 12. Because all of defendant's OVs were correctly scored, defendant is not entitled to resentencing.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro