*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THERON PHONE HUNT,

        Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 352862
St. Joseph Circuit Court
LC No. 19-022635-FC

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

This case arises out of an armed robbery that turned fatal. Defendant, Theron Phone Hunt, appeals as of right his jury trial convictions for felony murder, MCL 750.316(1)(b); two counts of armed robbery, MCL 750.529; unlawful imprisonment, MCL 750.349b; criminal sexual conduct in the second degree (CSC-II), MCL 750.520c(1)(c) (sexual contact during commission of another felony); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to life without the possibility of parole for felony murder; 30 to 70 years' imprisonment for each armed robbery count; 10 to 30 years' imprisonment for unlawful imprisonment; 10 to 30 years' imprisonment for CSC-II; and two years' imprisonment for felony-firearm.

On appeal, defendant argues (1) that the trial court improperly instructed the jury to infer malice from the underlying felony and that defense counsel was ineffective for failing to object; (2) that defendant did not have the requisite malice for felony murder; (3) that the trial court abused its discretion by not granting a mistrial; and (4) that the prosecutor engaged in misconduct by misstating the law during closing arguments. Defendant also argues in a Standard 4 brief[1] that the district court abused its discretion when it bound over defendant on Count 2, armed robbery of

---

[1] Defendant's Standard 4 Brief was filed pursuant to Supreme Court Administrative Order No. 2004-6.

Kevin Johnson, and that prosecutor had not established the *corpus delicti* of that offense at the preliminary examination. For the reasons set forth in this opinion, we affirm.

## I. BASIC FACTS

In November 2018, Johnson and his girlfriend, Heather Little, contacted Staniela King seeking to buy methamphetamine. King then contacted defendant to see if she could get $200 worth of methamphetamine for Johnson. Defendant and King communicated through Facebook, and defendant agreed to provide the methamphetamine.

Before the delivery, defendant was using methamphetamine with Kayla Cheney and Tyler McNeil. Defendant informed McNeil that he planned to conduct a fake drug sale and swindle King. Defendant told McNeil and Cheney to come with him, and he instructed McNeil to bring a shotgun. [2]

Defendant, Cheney, and McNeil arrived at King's house at 1:14 a.m. Cheney had mace and McNeil had the shotgun. Once they were in King's house, defendant nodded to Cheney, and Cheney sprayed mace at King. Defendant then grabbed King, and McNeil put the gun to her face. Cheney and later McNeil bound King with duct tape, and the group proceeded to "ransack" the house, packing things and putting them in their car. During the robbery, defendant pinched King's vagina while she was taped up and made comments about sexually assaulting her. After the group packed up King's belongings, they quieted down, unscrewed a light bulb, and waited for Johnson.

When Johnson arrived and walked into King's house, defendant pointed the gun at him. Defendant asked Johnson where the money was, and Johnson told him it was in his truck. Defendant handed the gun to one of the other assailants and went to Johnson's truck. Testimony is conflicting as to who defendant originally handed the gun to, but it ultimately ended up in Cheney's hands. Johnson attempted to get up or lunge toward Cheney, and Cheney shot and killed him.[3] At Johnson's truck, defendant encountered Little and threatened to cut her throat if she did not give him the money. Defendant then took money and a cell phone from Johnson's truck. Cheney and McNeil ran out of the house to the car; defendant joined them and they fled. Defendant instructed McNeil to throw the shotgun in the woods, and he burned McNeil's bloodstained clothes.

Defendant was later arrested by police. When St. Joseph County Sheriff's Sergeant Brandon Dahl processed defendant's vehicle, there were many stolen items from King's residence as well as Johnson's cell phone in the vehicle. Defendant subsequently directed police to the shotgun. He admitted to Cass County Sherriff's Detective Chad Spence that they went to King's residence to conduct a fake drug deal, but he put most of the blame on McNeil and Cheney. He

---

[2] Cheney and McNeil testified against defendant at trial. The prosecution offered them plea deals in exchange for their testimony.

[3] Cheney pleaded guilty to second-degree murder, and she was later sentenced to 25 to 75 years' imprisonment. McNeil entered a plea to one count of armed robbery, and he was sentenced to 12 to 60 years' imprisonment.

claimed they were the ones who packed King's belongings into the car. Defendant stated that when Johnson came in, he went to the truck and took the money and a cell phone.

Defendant was convicted and sentenced as stated earlier, and he now appeals as of right.

## II. ANALYSIS

### A. FELONY MURDER JURY INSTRUCTION

Defendant first argues that the trial court improperly instructed the jury regarding felony murder. Specifically, defendant asserts that the jury was erroneously instructed to infer malice from the underlying felony, armed robbery. However, in this case, defendant approved the final jury instructions. Where defense counsel expressly approves the jury instructions given by a trial court, the defendant has waived any error with regard to those instructions. See *People v Head*, 323 Mich App 526, 537; 917 NW2d 752 (2018). Therefore, defendant's challenge to the jury instructions is waived. See *id*. However, defendant concurrently argues that defense counsel was ineffective for failing to object to the jury instructions. We disagree.

Generally, whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews constitutional questions de novo and a trial court's factual determinations for clear error. *Id*. A factual finding is clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court's review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The jury instructions must contain the elements of the crime and must allow the jury to consider material issues, defenses, or theories if there is evidence to support them. *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014).

Felony murder is defined as murder committed in the perpetration of, or attempt to perpetrate, one of many enumerated crimes, including robbery. MCL 750.316(1)(b). Our Supreme Court has held that a defendant must also have committed the underlying felony with malice. *People v Dumas*, 454 Mich 390, 397; 563 NW2d 31 (1997). Malice requires a defendant to have one of the following three intents: (1) the intent to kill; (2) the intent to do great bodily harm; or (3) a wanton and willful disregard of the likelihood that the natural tendency of the defendant's act is to cause death or great bodily harm. *Id*. at 398. A "jury may infer a malicious intent from the facts and circumstances of the underlying felony." *Id*.

In this case, defendant was charged on an aiding-and-abetting theory. See MCL 767.39. The elements for aiding and abetting are (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and

-3-

encouragement. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "An aider and abettor's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *Id*. at 474.

Relying on *Dumas*, defendant argues that the trial court erred when it instructed the jury that it may infer malice from the underlying felony. In *Dumas*, the defendant was charged with felony murder with armed robbery as the underlying felony, and the Court examined the following jury instruction:

> If you find that the defendant consciously intended to commit, attempted to commit or assist others in the commission of the crime of robbery or larceny, you *may infer* that he knowingly created a high risk of death or serious bodily injury with knowledge that it probably would cause death. [*Dumas*, 454 Mich at 401.]

The Court concluded that the instruction, examined in isolation, is erroneous because "the jury could conclude that it *may infer* defendant's intent to create a high risk of death or great bodily harm with the knowledge that death was the likely result from the intent to commit the underlying crime *alone*, even if the facts and circumstances of the crime did not support that finding." *Id*. at 402. And it would allow the jury "to convict [a] defendant for murder without finding that he had a malicious state of mind when he committed the crime." *Id*. The Court explained that this instruction should not be used unless it is followed up with further clarifying instructions. *Id*. The *Dumas* Court held,

> Where the trial court decides to give an instruction that the jury may infer malice from the commission of an underlying crime, it should further explain at the same time that the jury may only infer this malice if the facts and circumstances of the intent to commit the underlying crime warrant the inference. [*Id*. at 408.]

In the instant case, the trial court never instructed the jury that it may infer malice from the commission of the underlying felony. Therefore, the trial court was not required to further explain the inferred intent as required by *Dumas*. See *id*. Instead, the trial court properly stated, "The defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence." The trial court properly instructed the jury as to the intent required:

> In Count 1 first degree felony murder the defendant is charged with first degree felony murder. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, that the defendant caused the death of Kevin Johnson; that is, Kevin Johnson died as a result of a gunshot wound.

> Second, that the defendant had one of these three states of mind: He intended to kill, or he intended to do great bodily harm to Kevin Johnson, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

-4-

Third, that when he did the act that caused the death of Kevin Johnson the defendant was committing or attempting to commit or helping someone else commit the crime of armed robbery.

Nowhere did the trial court state that the jury *may infer* malice from the underlying felony. Moreover, the above instruction mirrors the model jury instructions for first-degree felony murder. M Crim JI 16.4. Therefore, the trial court properly instructed the jury regarding malice, and no further instruction was necessary.

To be entitled to a new trial for ineffective assistance of counsel, a defendant must show: (1) deficient assistance, meaning counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) prejudice, which means there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Trakhtenberg*, 493 Mich at 51. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, defense counsel was not required to make a meritless objection to the jury instructions. See *id*. Also, because defendant has failed to establish any prejudice from the failure to object to proper instructions, defendant's claim of ineffective assistance must fail. See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

## B.   SUFFICIENT EVIDENCE OF FELONY MURDER

Defendant next contends that there was insufficient evidence presented at trial for the jury to find the elements of first-degree felony murder proved beyond a reasonable doubt. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*.

To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).]

In order to satisfy the malice standard required under *People v Aaron*, 409 Mich 672, 299 NW2d 304 (1980), the prosecution must show that the aider and abettor either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. [*Id*. at 140-141.]

"Further, if an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with 'wanton and willful disregard' sufficient to support a finding of malice." *Id*. at 141.

"[E]vidence of defendant's specific intent to commit a crime or knowledge of the accomplice's intent constitutes sufficient *mens rea* to convict under our aiding and abetting statute." *People v Robinson*, 475 Mich 1, 6-7; 715 NW2d 44 (2006). "[O]ne who aids and abets a felony murder must have the requisite malice to be convicted of felony murder, but need not have the same malice as the principal." *Id*. at 14.

> Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. [*Id*. at 15.]

An aider and abettor's state of mind may be inferred from all the facts and circumstances surrounding the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). Factors to consider include a close association between the principal and the defendant, the defendant's participation in the planning or execution of the crime, and evidence of flight following the crime. *Id*. at 757-758. Malice, for purposes of proving felony murder, can be inferred from the use of a deadly weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004).

In *Bulls*, 262 Mich App at 624, this Court upheld the defendant's conviction for felony murder in a similarly egregious factual scenario. The defendant in *Bulls* planned to rob a man who propositioned him for sex. *Id*. at 622. The defendant recruited the help from one of his friends, "D-Mack." *Id*. The defendant asked D-Mack if he had "some heat" to bring, and D-Mack grabbed a shotgun. *Id*. When the two arrived at the victim's house, they forced their way in, pointing the shotgun at the victim. *Id*. The defendant then searched the victim's house for valuables, while D-Mack took the victim to a bedroom. *Id*. The defendant then heard a shotgun blast and saw that the victim was lying dead at the bottom of the stairs. *Id*. at 622-623. D-Mack told the defendant that he shot the victim because the victim tried to run. *Id*. at 623. On appeal, the defendant argued that there was insufficient evidence to convict him of felony murder. *Id*. at 624.

This Court upheld the defendant's conviction and concluded that the evidence was sufficient to establish defendant's malice. *Id*. at 625. This Court reasoned that the "defendant instigated the criminal transaction by going to D-Mack's house, inviting him to participate in the robbery, and encouraging D-Mack to use a dangerous weapon during the robbery." *Id*. at 626-627. "Although the evidence did not show that defendant handled the weapon, he nevertheless 'used' the weapon, with D-Mack's help, to perpetrate the crime and such 'use' also supports an inference of malice." *Id*. at 627. "Although defendant's knowledge of D-Mack's intent to kill the victim would, in itself, show that defendant was acting with wanton and wilful disregard, the jury could infer defendant's malice independent of his knowledge of D-Mack's intent." *Id*. (quotation marks and citation omitted).

Similar to *Bulls*, in this case, defendant orchestrated the armed robbery with the help of Cheney and McNeil, who had both used methamphetamine. See *Carines*, 460 Mich at 757.

Defendant then initiated the violence by nodding and telling Cheney to "mace" King. Not only was it defendant's idea to bring the gun, but Cheney, McNeil, and King all testified that defendant had the gun at different times throughout the night. And as soon as Johnson walked in, testimony established that it was defendant who pointed the gun at him, which shows that defendant had even more "use" of the gun than the defendant in *Bulls*. Although many of the witnesses' testimonies were contradictory on some points, Cheney's, McNeil's, and King's testimonies all indicate that defendant was in charge. Further, there is ample evidence that defendant ran from the scene. See *id*. Not only did defendant run to the vehicle and speed away, but there is testimony that when Little asked where her boyfriend was, defendant told her that "you better go [get] him, he's over there dying bitch." This shows a total disregard for human life. Defendant did not stop or attempt to help Johnson. After the shooting, defendant proceeded to try and hide the evidence by telling McNeil to throw the shotgun in the woods and burning McNeil's clothes. Defendant also sexually assaulted King by "pinching" her vagina while she was taped up. Defendant also made threatening sexual remarks to King, suggesting that he and McNeil sexually assault her. The sexual assault and threats also show a willful disregard for human life. When the evidence is viewed in a light most favorable to the prosecution, a reasonable jury could find that malice was proven beyond a reasonable doubt. See *Meissner*, 294 Mich App at 452.

Defendant claims there was no evidence to support a finding beyond a reasonable doubt that defendant intended to aid Cheney in shooting Johnson, or that he knew Cheney intended to shoot him. He points to the fact that he was out of the house at the time Cheney reflexively pulled the trigger after Johnson lunged at her, thus failing to establish that defendant had the requisite malice. But defendant pointed the shotgun at Johnson before asking Johnson where the money was located. When Johnson told defendant that the money was in the truck, he simply handed the gun to Cheney, who testified that she had virtually no experience with weapons and that she had used methamphetamine. Therefore, a reasonable jury could conclude that defendant knowingly created a very high risk of death or great bodily harm, and that shooting Johnson was a "natural and probable consequence" of the armed robbery. See *Robinson*, 475 Mich at 15.

## C. MISTRIAL

Next, defendant contends that the trial court abused its discretion by denying defendant's motion for a mistrial. We disagree.

"We review for an abuse of discretion a trial court's decision regarding a motion for a mistrial. This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

At trial, defendant moved for a mistrial on the ground that McNeil's testimony revealed that defendant was incarcerated. Generally, "[r]eferences to a defendant's prior incarceration are, unless specifically ruled otherwise, generally inadmissible." *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983). But "not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial." *People v Griffin,* 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007). And "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

"A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Schaw*, 288 Mich App at 236 (quotation marks and citation omitted).

Defendant objects to the following testimony:

> [*Prosecutor*]: Have you been threatened by [defendant] since this happened?
>
> [*McNeil*]: I have.
>
> [*Prosecutor*]: What—describe that.
>
> [*McNeil*]: On a day to day basis he calls me a rat, he—
>
> [*Defense Counsel*]: Objection
>
> [*McNeil*]: —tries popping the doors.
>
> [*Defense Counsel*]: Objection. May we approach?
>
> [*McNeil*]: Walking the hall.

After a bench conference, the prosecutor asked McNeil whether he was afraid of repercussions from testifying against defendant. McNeil answered that he was.

On appeal, defendant pivots his argument from the implication that he was incarcerated to the content of McNeil's answers, asserting that McNeil's testimony amounted to impermissible character evidence under MRE 404(b), which unfairly presented him as violent or threatening.[4] But the prosecutor did not elicit this testimony for the purpose of showing that defendant had a reputation for being violent. Rather, the prosecutor was trying to illustrate that while McNeil received a plea deal in exchange for his testimony, he was also afraid to testify against defendant, which was relevant to his incentives and disincentives when testifying, and which were important to the jury's assessment of his credibility. The testimony was not unduly prejudicial to defendant,

---

[4] With respect to defendant's objection at trial concerning any reference to defendant being in jail, McNeil's answer was shut down right away. Defense counsel objected before McNeil could finish his sentence. Additionally, McNeil's testimony does not outright state that defendant was in jail. Defendant argued in the trial court that the jury picked up on the reference because the jury submitted a question to the trial court asking how defendant could contact McNeil every day. But the trial court did not believe the jury picked up on these references, and even if the jury did, the trial court did not allow the questioning to go any further. Further, the prosecution did not specifically solicit this testimony from McNeil. McNeil answered the question, and defense counsel properly objected before McNeil could finish. This is precisely the type of unresponsive, volunteered mention of incarceration that Michigan law makes clear does not entitle a defendant to a mistrial. See *Haywood*, 209 Mich App at 228.

nor did it impair his ability to receive a fair trial. See *Schaw*, 288 Mich App at 236. Therefore, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

## D.   PROSECUTORIAL MISCONDUCT

Further, defendant maintains that, during closing arguments, the prosecutor made a misstatement of law and invited the jury to convict defendant of felony murder based solely on the premise that because he played such a large role in the robbery, he was guilty just as if he pulled the trigger. We disagree.

Because defendant did not object to the prosecutor's statement or request a curative instruction, this issue is unpreserved. See *Bennett*, 290 Mich App at 475. For unpreserved claims of prosecutorial misconduct, this Court examines whether the claimed error amounted to plain error that affected the defendant's substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). "Absent an objection or a request for a curative instruction, this Court will not review alleged prosecutorial misconduct unless the misconduct is sufficiently egregious that no curative instruction would counteract the prejudice to defendant or unless manifest injustice would result from failure to review the alleged misconduct." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

"A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *Id*.

"The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury." *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987), aff'd 431 Mich 506 (1988). "[A] prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005).

Defendant's argument relates to the following:

> Second, that the defendant had one of these states of mind: He intended to kill, he intended to do great bodily harm, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions. Remember, we know, and that could have said her actions, because there's 3 people involved. We know Kayla is the one that fired the gun. She's the one that pulled the trigger, she's the one that ultimately caused the death. But you have to remember if Mr. Hunt—if you believe he played a role, which I believe the evidence has shown that he played a large role in all of this, then he is guilty just as if he pulled the trigger.

-9-

I think the third portion of that, where knowingly created a high risk of something happening, bringing a loaded sawed off shotgun into a situation where everyone had been using methamphetamine and the robbery was going to occur I think is creating that situation exactly.

When viewed in context, the prosecutor's argument was appropriate. Defendant argues that this statement allows the jury to simply infer malice from the underlying felony. However, the prosecutor correctly observed the malice requirement before and after he made the allegedly improper statement. See *Riley*, 468 Mich at 140. Therefore, the prosecutor did not misstate the law, and defendant's argument must fail.

Even if there was error, the trial court issued an instruction informing the jury that the lawyers' arguments were not evidence and should not be considered as such. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 542; 775 NW2d 857 (2009) (quotation marks and citation omitted). As a result, any minimal misstatement of law was cured. See *Grayer*, 252 Mich App at 357.

Defendant concurrently asserts that defense counsel was ineffective for failing to object to the prosecutor's closing arguments. However, defense counsel was not required to make a meritless objection to the prosecutor's closing arguments. See *Ericksen*, 288 Mich App at 201. Also, because defendant has failed to establish any prejudice from the failure to object, defendant's claim of ineffective assistance must fail. See *Carbin*, 463 Mich at 599-600.

## E. BINDOVER

In defendant's Standard 4 brief, he contends that the district court abused its discretion when it bound him over on Count 2, the armed robbery of Johnson, and that testimony provided at the preliminary examination failed to fulfil the *corpus delicti* requirement for that charge. We disagree.

"Absent an abuse of discretion, reviewing courts should not disturb a [district court's] decision to bind over a criminal defendant for trial." *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010).

"The purpose of the preliminary examination is to determine whether a felony has been committed and whether there is probable cause for charging the defendant therewith." *Id.* (quotation marks, citation, and alterations omitted). "If there is probable cause, the [district court] must bind over the defendant to appear before the circuit court, or other court having jurisdiction of the cause, for trial." *Id.* (quotation marks, citation, and alteration omitted). Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *Id.* "This standard is less rigorous than the requirement to find guilt beyond a reasonable doubt to convict a criminal defendant, and the gap between probable cause and guilt beyond a reasonable doubt is broad." *Id.* (quotation marks and citation omitted). "To establish that a crime has been committed, a prosecutor need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009).

-10-

"If the evidence conflicts or raises a reasonable doubt, the defendant should be bound over for trial, where the questions can be resolved by the trier of fact." *Id.*

The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon. *People v Smith*, 478 Mich 292, 319; 733 NW2d 351 (2007).

In this case, there was sufficient probable cause to bind over defendant for the armed robbery of Johnson. King testified that she heard defendant demand money from Johnson. After Johnson replied that he did not have the money, Cheney hit King in the head with the gun. The next thing King remembered was hearing a "boom" and smelling "smoke." Eventually, she pulled the duct tape off and began giving Johnson CPR. St. Joseph County Sheriff's Deputy Kevin Brooks also testified that two women led him to Johnson, who was laying bloody, on his back, just outside of the residence. Additionally, defendant admitted to going to Johnson's truck and taking money and a cell phone that was later identified as belonging to Johnson. Defendant argues that any items of Johnson's were taken after defendant had already left the residence without the gun. But defendant threatened Johnson at gunpoint while in the residence, and he handed the gun to a cohort to restrain Johnson while defendant went to procure Johnson's property from the truck. Regardless whether defendant was the one who actually wielded the gun, it was used in concert with defendant's taking Johnson's property. Therefore, there was probable cause to bind over defendant on the armed robbery of Johnson, and the district court did not abuse its discretion. See *Plunkett*, 485 Mich at 57.[5]

With regard to his *corpus delicti* argument, defendant contends that he was bound over on the armed robbery of Johnson based solely on his statement to law enforcement. We disagree.

"This Court reviews a lower court's decision regarding the *corpus delicti* requirement for an abuse of discretion." *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). "The *corpus delicti* rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence." *Id.*

The *corpus delicti* rule's purpose "is to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Ish*, 252 Mich App 115, 116; 652 NW2d 257 (2002). "[I]t is not necessary that the prosecution present independent evidence of every element of the offense before a defendant's confession may be admitted." *Id.* at 117. Such a requirement "loses sight of the purpose of the rule and would require that the entire crime be proved before a confession could ever be admitted." *Id.* (quotation marks and citation omitted).

---

[5] Defendant also asserts that the trial court abused its discretion when it denied his motion to dismiss Count 2. Defendant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Regardless, because we have already concluded that there was probable cause to bind over defendant on Count 2, the trial court's denial of the motion was not an abuse of discretion.

In this case, the testimony from King, Deputy Brooks, Sergeant Dahl, and Detective Spence was sufficient to establish that an injury occurred and some criminal element was involved. King testified that she was robbed at gunpoint by defendant and his group, and that it was clear that defendant was the one "calling the shots." King also testified that defendant and his group laid in wait for Johnson by being quiet and dimming the lights. King heard defendant telling Johnson to give him the money and asked Johnson where the money was. Both King and Deputy Brooks testified that they gave CPR to Johnson and that Johnson was shot. The medical examiner's report stated that King's death was caused by a gunshot wound. Deputy Brooks searched King's residence, which was "ransacked" and in "shambles." There were also blood tracks inside the house and entrance area. When Sergeant Dahl processed defendant's vehicle, he found several of the items that were stolen during the robbery in the vehicle. Detective Spence was able to identify the cell phone that defendant took as Johnson's cell phone. Once this evidence was presented, defendant's statement was properly admitted to establish that he took the money and phone from Johnson's truck. Therefore, no error occurred in the admission of defendant's statement as proof of armed robbery. See *id*.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

-12-